INTERCONTINENTAL INDUSTRIES, INC., Petitioner,

v.

AMERICAN STOCK EXCHANGE and Securities and Exchange Commission, Respondents.

No. 29861.

United States Court of Appeals, Fifth Circuit.

Dec. 20, 1971.

Virgil M. Wheeler, Jr., New Orleans, La., Nathan M. Fuchs, New York City, for petitioner.

George H. MacLean, Gordon L. Nash, New York City, Hubert D. Johnson, Dallas, Tex., for American Stock Exchange.

Philip A. Loomis, Jr., Gen. Counsel, Walter P. North, Associate Gen. Counsel, Theodore Sonde, Asst. Gen. Counsel, Frederic T. Spindel, Atty., S.E.C., Washington, D. C., for the S. E. C.

Before GOLDBERG, GODBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

We are asked by Intercontinental Industries, Inc. (INI) to review an order of the Securities and Exchange Commission granting the American Stock Exchange the right to strike the common stock of INI from listing and registration on the Exchange.[1] Petitioner seeks to set the delisting order aside on the grounds that the Exchange incorrectly interpreted its own rules as to removal of a stock from listing and that both the Exchange and the Commission failed to follow fundamental concepts of due process required by the United States Constitution.[2] Finding INI's arguments to be without merit, we affirm the order of the Securities and Exchange Commission.

The Exchange's delisting application was based on its determination that INI had disseminated or permitted the dissemination of inaccurate and misleading information concerning corporate developments, thereby violating its listing agreement. This standard agreement between the Exchange and the companies listed on the Exchange requires prompt public disclosure by the listed company of any material development in its affairs and operations which might significantly affect the market for its se-

---

1. Securities Exchange Act, § 12(d), 15 U.S.C. § 78l(d); Rule 12d2–2(c), 17 CFR 240.12d2–2(c).

2. Jurisdiction is based upon Section 25 of the Securities Exchange Act of 1934 (15 U.S.C. § 78y).

curities or influence investment decisions.[3]

The action seeking to bar the stock from being traded on the Exchange was the culmination of a series of events which commenced administratively on June 19, 1969, when the Exchange halted the trading of common stock of INI on the Exchange, a step triggered by the unusual trading activity in the stock as a result of certain corporate announcements.[4] One week later, the Commission suspended all trading in the stock, pending issuance by INI of a clarifying statement concerning the facts and circumstances surrounding the previous announcements about the acquisition of Prebuilt Homes, Inc. and the purchase of stock of and merger with Capital Foundry Co., in conjunction with Capital Bancshares, Inc. On July 11, 1969, the Commission brought suit in the United States District Court for the Southern District of New York alleging a violation of the antifraud provisions of the securities acts in disseminating false or misleading information concerning Prebuilt.[5] All the defendants, except one INI official temporarily out of the country, without admitting or denying the allegations in the complaint, consented to entry of an injunction prohibiting any further such activities. On July 18, 1969, INI released a letter commenting on the various matters which had been questioned by the Exchange and the Commission.[6] The Commission then ter-

3. We are told in the briefs that this is the first time that a stock has been delisted for reasons other than failure to meet the financial criteria required for listing.

4. On April 11, 1969, the Dow Jones broad tape and the financial press carried an announcement by INI that it was negotiating to acquire 81% of an unnamed modular home builder. INI's president was quoted as stating that "the unnamed builder has about $130,-000,000 in orders on hand."

Four days later, INI announced that it had agreed to acquire 81% of Prebuilt Homes, Inc., a "Detroit home builder" which, according to INI's president, had orders for more than 9,800 homes, including 800 for the Metropolitan Detroit Citizens Development Authority. This announcement was also carried by Dow Jones and the financial press.

On May 20, 1969, INI issued a press release stating that a definitive contract for the purchase of an 81% interest in Prebuilt had been executed. Meanwhile, Prebuilt was distributing written materials which indicated that it would have annual sales of about $141 million and earnings of about $10 million by 1973.

A Wall Street Journal article of June 3, 1969, reported a securities analyst's statement that an INI official had predicted that Prebuilt's earnings would "jump" from an anticipated $100,000 in the fiscal year ending July 31, 1970, to $9 million three years later and that INI's consolidated earnings would rise from $425,000 to $10 million in the same period.

On June 13, 1969, INI announced that it had agreed with Capital Bancshares, Inc. to purchase 4.3% of the outstanding stock of Central Foundry Co., and that INI and Bancshares proposed to unite the two companies with Central Foundry. Press accounts appearing on June 16 quoted INI's president as stating that he understood the management of Central Foundry was sympathetic to the proposed combination of the three companies. The announcement included *pro forma* figures for the combined companies.

The effect of these announcements on the market price of INI stock was immediate and dramatic. During the last three weeks of March and the first week of April, 1969, the stock traded approximately 7,000 shares per week, in a price range of $11 to $13. During the last week of May, volume reached 233,000 shares and on June 13 the stock traded at a high of $31.25.

5. Section 17 of the Securities Act of 1933, 15 U.S.C. § 77q(a); Section 10 (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and 17 CFR 240.10b–5.

6. This letter contained the following admissions:

(a) At the time of the April announcements Prebuilt had no plan in operation, had not produced any modular homes, had only nominal tangible assets, and had no history of operations except that two of its officials had

minated its trading suspension order thereby permitting the resumption of over-the-counter trading in INI stock on July 25, 1969. The stock remained barred from trading on the Exchange.

On that same date the Exchange notified INI by letter that the matter of delisting was under review and that INI might have the opportunity for a hearing before the Exchange's Committee on Securities. On August 6, 1969, a hearing took place before that committee. The hearing lasted more than four hours, during which time INI presented 19 witnesses. The committee then recommended delisting to the Exchange's Board of Governors. The Board agreed with this recommendation and authorized the filing of the delisting application with the Securities and Exchange Commission.

Although INI requested a hearing before the Commission, it was refused on the ground that "no useful purpose would be served by the presentation of oral argument to us," since INI had presented in writing no facts or issues which had not already been presented to the Exchange.

Finding that the rules of the Exchange relating to delisting had been complied with, the Commission granted the delisting of INI's stock.

Before examining the points raised on this appeal, we make note that § 25(a) of the Exchange Act, upon which the jurisdiction of this court is based, provides that "the finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." On the record

before us there can be no doubt that substantial evidence supports the Commission's implicit findings that INI was guilty of making inaccurate and misleading statements with regard to its acquisition of Prebuilt and the proposed merger with Central Foundry Company and that these acts violated the listing agreement made by INI with the Exchange. INI makes no serious claim otherwise. Rather, it contends that its stock should not have been delisted because after its failure to comply with disclosure requirements it took prompt corrective action, which should prevent removal from listing under the rules of the Exchange. In any event, INI contends that it never was given a full and fair hearing prior to the decision of the Exchange, first, and the Commission, later, that it deserved delisting.

### I.

We deal first with the narrow question posed by INI in its brief as to whether the Commission was justified in holding that the Exchange correctly interpreted its own rule permitting delisting for non-compliance with disclosure requirements. This rule allows the Exchange to cause "suspension from dealings, and, unless prompt corrective action is taken, removal from listing."[7] INI contends that it took prompt corrective action following the suspension of its securities from trading, so that delisting is foreclosed.

Even assuming, without deciding, that there could be a situation where prompt corrective action would, as a matter of law, protect a stock from being delisted, such is not the case here. There is sub-

---

been associated with a company which had produced some prototypes and which currently was in bankruptcy.

(b) Prebuilt had no signed contracts to build modular homes. Although it had an award from the Metropolitan Detroit Citizens Development Authority, no contract had been signed.

(c) The reference to $130 million of orders was based on a letter of commitment from one of Prebuilt's own officers, who could not have purchased these homes with his own resources, but had to depend upon his ability to resell them.

(d) The projections of Prebuilt's earnings did not disclose that Prebuilt was bound to pay three of its officers 81% of its earnings above $5.2 million.

(e) The *pro forma* figures relating to INI, Bancshares and Central Foundry had been substantially overstated.

(f) The directors of Central Foundry had received no proposal and made no commitment concerning possible merger with INI and Bancshares.

7. American Stock Exchange Company Guide, § 1003.4.

stantial evidence to support the Exchange's contention that INI did not take such prompt corrective action.

It is apparent that INI did not make full disclosure of the facts until required to do so by the Exchange and the Commission. The first of the misleading and incomplete announcements was made in mid-April, 1969, and they continued into May and June. Nothing has been indicated in the record, briefs or oral argument that any action was taken until, as INI says in its own brief, it "was bludgeoned into issuing the clarifying letter in order to have its suspension lifted." This came only after all trading in the stock had been halted and a suit for injunction had been brought. We do not deem it unreasonable for the Exchange to determine that this was not the prompt action required by both the letter of the rule and the spirit of the listing agreement. The requirement of full disclosure of all corporate information which might influence investment decisions is the very heart of the federal securities regulations. S.E.C. v. Texas Gulf Sulphur Co., 401 F.2d 833, 858, 859 (2d Cir. 1968), cert. den. *sub nom.* Kline v. S.E.C., 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). The Exchange imposed upon INI a full measure of responsibility in this regard by obtaining a listing agreement which provides that:

"The Corporation will make prompt public disclosure of any material development in its affairs and operations, whether favorable or unfavorable, which might significantly affect the market for its securities or influence investment decisions."

This requirement is further clarified in the agreement as follows:

"It is expected that such statements will be factual and that judgment and restraint will be used in not publicizing information which may be construed as overoptimistic, slanted or promotional—such as estimates and forecasts not warranted by existing circumstances, premature statements of mergers or acquisitions or descriptions of new products still in the experimental stage, the commercial feasibility of which is problematical, etc."

Under the terms of this agreement, it is readily apparent that INI had a duty to correct any publicized misinformation about its corporation promptly when such disclosure is needed to make sure of a fully and accurately informed public, not when caught supplying faulty information. In keeping with the Congressional purpose of making the Exchange a self-regulatory body,[8] broad latitude must be given to the Exchange in making the critical judgment of when a company has failed to fulfill its responsibilities to such an extent that dealing on the Exchange in the security is unwarranted. INI argues that in every other instance where delisting was sought by the Exchange a violation of precise and established standards was charged, but that here no established standard exists concerning the meaning of "prompt corrective action." Since these are the rules of the Exchange, it should be allowed broad discretion in the determination of their meaning and application. We find no error in the Commission's approval of an interpretation of the rule which finds the acts of INI to be outside of the meaning of "prompt corrective action."

## II.

The broad thrust of INI's appeal is directed at the procedure followed by the Commission and the Exchange in delisting INI's stock. INI contends that it was denied the full and fair hearing demanded by the due process clause of the Constitution. We are confronted with some difficulty in the due process argument because the Exchange rules simply do not contain any provision governing the hearing to be conducted in connection with a delisting and do not provide the necessary elements for constitutional due process. The argument

8. See Silver v. NYSE, 373 U.S. 341, 352–353, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).

of the Exchange that it has no specific rules because it "must make innumerable determinations concerning a variety of matters" and that "no single, inflexible procedure would meet the needs of each and every situation" is particularly unconvincing in the light of present day notions of fair play.

■ Likewise, the Exchange's position that constitutional due process is not required since the Exchange is not a governmental agency is clearly contrary to numerous court decisions. See Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Colon v. Tompkins Square Neighbors, Inc., 294 F.Supp. 134 (S.D.N.Y.1968); McQueen v. Druker, 438 F.2d 781 (1st Cir. 1971). The intimate involvement of the Exchange with the Securities and Exchange Commission brings it within the purview of the Fifth Amendment controls over governmental due process.[9]

There is no merit to the Commission's argument that "the action by the Exchange and the order delisting INI's stock do not involve any impairment of substantial 'rights' or result in serious 'economic injury or deprivation'" and that "since delisting does not affect a company's business operations or deprive a company or its stockholders of the right to sell or purchase its stock in other markets, no substantial deprivation of interest is presented here which would dictate a need for a hearing."

However, rather than decide those points here, we merely make it clear that our decision does not cast our imprimatur on these arguments or the Exchange's lack of rules, or the Commission's failure to require proper rules. The important thing to be determined in this litigation is whether the Exchange did grant INI a hearing meeting all the applicable procedural requirements. Jennings v. Mahoney, 404 U.S. 23, 92 S.Ct. 180, 30 L.Ed.2d 143 (1971).

Specifically, INI complains of (a) lack of adequate notice, (b) lack of confrontation and cross-examination of witnesses, (c) improper mixing of the functions of the Exchange's Committee on Securities, (d) failure of the Exchange's Board of Governors to permit INI to appear before it, and (e) failure of the Commission to hold a hearing. We shall deal with petitioner's contentions *seriatim*.

■ (a) *Notice*. The right to a fair hearing in an administrative proceeding embraces "a reasonable opportunity to know the claims of the opposing party and to meet them." Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 773, 776, 999, 82 L.Ed. 1129 (1938). Where the notice given to the responding party is not misleading and apprises that party of the issues in controversy, the requirements of the law are met. Cella v. United States, 208 F.2d 783 (7th Cir. 1953), cert. den., 347 U.S. 1016, 74 S.Ct. 864, 98 L.Ed. 1138 (1954); L. G. Balfour Co. v. F.T.C., 442 F.2d 1 (7th Cir. 1971).

■ The written notice provided in this case was a four page letter from the Exchange to INI's president. When read with "due regard for the practicalities and peculiarities of the case," Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), this letter satisfied constitutional demands. The letter in-

---

9. 1. The Exchange must register with the Commission. (Section 6, 15 U.S.C. § 78f).
2. The Exchange's rules must be submitted to the Commission and are subject to alteration or supplementation by the Commission. (Section 6(a), 15 U.S.C. § 78f(a); Section 19(b), 15 U.S.C. § 78s(b)).
3. The Exchange's members are closely regulated by the Commission. (Sections 9(a), 11, 17(a) and 19(a) (3), 15 U.S.C. §§ 78i(a), 78k, 78q(a), 78s(a) (3)).
4. A security may not be delisted without application to the Commission. (Section 12(d), 15 U.S.C. 78l(d)).
5. The Exchange may be suspended or its registration withdrawn by the Commission. (Section 19(a) (1), 15 U.S.C. § 78s(a) (1)).

formed INI that the Exchange was considering delisting INI's stock, that this action was being contemplated because of the misleading information which had been disseminated about INI, Prebuilt and Central Foundry, and that INI would be given a hearing before the Exchange's Committee on Securities.

Before this letter was sent, trading in INI's stock had been suspended for six weeks, the Commission had filed a lawsuit in which a consent decree had been entered against INI, INI's president had sent a letter to stockholders outlining the exact nature of the inaccurate statements the company had made and Exchange officials had held numerous meetings with INI in which the company's noncompliance with disclosure requirements was explored. All of this activity involved the same facts and concerns as the hearing and the pending action by the Exchange. The notice under such circumstances need not be composed with the precision of a criminal indictment. Woodbury v. McKinnon, 447 F.2d 839 (5th Cir. 1971).

(b) *Confrontation and Cross-Examination.* On August 6, 1969, the Exchange's Committee on Securities held a four hour hearing, during which INI presented nineteen witnesses. It is INI's contention in this court that it should also have been allowed to cross-examine the members of the Exchange staff who prepared a report for the Committee on Securities, and to confront an unnamed securities analyst who purported to be the source of the inaccurate information appearing in the Wall Street Journal article of June 3rd (see fn. 4). We think that INI's arguments on this point misconceive the nature of the proceeding against it.

■ Virtually all of the material facts had been admitted by INI in its letter to the stockholders on July 18 and are not really disputed by INI now. In fact, INI can hardly do so because if the facts in that letter are incorrect, then the letter itself, uncorrected, becomes a vio-

lation of the requirement of full disclosure. With no dispute as to the material facts, it does not appear that there were issues in the case which required cross-examination. Compare Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970). This court has expressly rejected the notion that a "full-dress judicial hearing, with the right to cross-examine witnesses" is required in every case. Dixon v. Alabama State Board of Education, 294 F.2d 150, 159 (5th Cir. 1961); Wright v. Texas Southern University, 392 F.2d 728 (5th Cir. 1968). There is no reason why INI should have been permitted to examine officials of the Exchange or its staff at the meeting. These were the people making a determination, the judges so to speak, not adverse witnesses. San Francisco Mining Exchange v. Securities and Exchange Commission, 378 F.2d 162 (9th Cir. 1967); Woodbury v. McKinnon, *supra.*

■ The issue as to the Wall Street Journal article was not whether its sources were trustworthy, but what, if anything, INI did to correct the admittedly misleading information there published. There was no dispute as to the publication. INI's president was aware of the publication, should have known of its probable impact on trading activity, had access to ready verification of the information and apparently did no more to undo its harmful effects than to make the mild disclaimer that "These estimates are not coming from our management—nor me." The question for decision was whether more was required. This question did not turn on the source of the inaccurate information which INI sought to reveal by cross-examination.

■ (c) *Mixing of Functions.* INI argues that there was a due process violation when the Exchange's Committee on Securities first conducted the August 6th hearing and then sat with the Board of Governors while the entire Board considered whether or not to file a delisting application. This, in INI's

view, amounted to an unconstitutional mixing of the functions of prosecutor, judge and jury in the same body. The principle is well established, however, that due process is not violated when an administrative agency exercises both investigative and judicial functions. F.T. C. v. Cinderella Career and Finishing Schools, Inc., 131 U.S.App.D.C. 331, 404 F.2d 1308, 1315 (1968).

■ (d) and (e) *Hearing Before the Board of Governors and Commission.* INI's final argument is that it was denied due process because it was not permitted to appear and present evidence before the Exchange's Board of Governors or the Securities and Exchange Commission. INI admits in its brief, however, that constitutional requirements are satisfied if a full hearing is held at some stage of the proceeding prior to final adjudication. Nickey v. Mississippi, 292 U.S. 393, 54 S.Ct. 743, 78 L.Ed. 1323 (1934); Rowan v. United States Post Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). Having had a full hearing before the Exchange's Committee on Securities, INI had no constitutional right to a second hearing before the Board of Governors, or the Commission.

■ There is no statutory requirement that the Commission hold a hearing before granting a delisting application. Under § 12(d) of the Securities Exchange Act, 15 U.S.C. § 78*l*(d), and the Commission's rules promulgated thereunder, 17 CFR § 240.12d2–2(c), the Commission "may" order a hearing on a delisting application. Thus, in the circumstances of this case, and in the absence of a showing that petitioner had new evidence to present to the Commission, see American Export & Isbrandtsen Lines v. Federal Maritime Commission, 334 F.2d 185 (9th Cir. 1964), we cannot say that it was error for the Commission to decline to grant INI a hearing.

The order of the Securities and Exchange Commission is affirmed.