**John WHITE, Appellant (Petitioner),**

v.

**BOARD OF TRUSTEES OF WESTERN WYOMING COMMUNITY COLLEGE DISTRICT and Mr. Ron Vosika, in his official capacity as President of the Board of Trustees, Appellees (Respondents).**

No. 5601.

Supreme Court of Wyoming.

July 20, 1982.

Rehearing Denied Aug. 9, 1982.

C. M. Aron and Richard A. Hennig of Aron & Hennig, Laramie, signed the brief on behalf of appellant. Mr. Aron appeared in oral argument.

Ford T. Bussart of Greenhalgh, Bussart, West & Rossetti, P.C., Rock Springs, signed the brief and appeared in oral argument on behalf of appellees.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

This appeal is from an order of the district court sustaining the action taken by the Board of Trustees of Western Wyoming Community College District (appellee)[1] in terminating appellant's teaching contract.

Appellant's termination was premised upon his permitting members of the school band, while on tour under his supervision, to consume marijuana and alcoholic beverages, and for his own consumption along with the band members, as well, in breach of the terms of his contract. Appellant presents the following issues for our review:

"A. Whether the Appellees terminated Appellant's teaching contract without sufficient notice, hence without due process of law.

"B. Whether the Appellant had the burden to discover evidence concerning charges not included in the notice to him.

"C. Whether the Appellees erred in admitting irrelevant and immaterial evidence concerning matters outside the scope of the notice.

"D. Whether the Appellees' termination of Appellant's teaching contract was an abuse of discretion."

We will affirm.

The appellant was an assistant professor of music at the Western Community College (College) pursuant to his employment contract with that institution dated March 27, 1980. Portions of the contract include as terms:

"The said Instructor further agrees to well and faithfully perform duties as an instructor in said College, and to faithfully comply with all rules and regulations established for the government thereof, whether provided by law or adopted by the Board of Trustees of said College; and to accept such assignments and extra-curricular activities or duties as the Board of Trustees of said College may deem advisable.

\* \* \* \* \* \*

---

[1]. During the course of this opinion we will use the term appellee even though the caption of the case shows the Board of Trustees and its chairman as appellees; however, they did not prosecute the case against appellant. It was prosecuted in the name of the president of the college, with his separate counsel. The Board had its own counsel present in an advisory capacity. The record is explicit in making it clear that the Board at no time took part in any investigation or the prosecution and was kept sanitized and apart so as to perform its quasi-judicial function in a completely disinfected atmosphere, avoiding the taint of being prosecutor and judge condemned by this court in *Monahan v. Board of Trustees of Elementary School District No. 9, County of Fremont*, Wyo., 486 P.2d 235 (1971).

"It is further agreed that this agreement may, at the option of said College, be declared null and void for any of the following reasons:

\*   \*   \*   \*   \*   \*

"2. Neglect, failure or refusal on the part of said Instructor to carry out any provisions of this agreement.

\*   \*   \*   \*   \*   \*

"4. Incompetency or failure to properly instruct and *govern the students* in charge of said Instructor, or failure to carry out properly any other duties assigned said Instructor. [Emphasis added.]

"5. Conduct on the part of said Instructor detrimental to the best interests of said College or unbecoming an Instructor in said College."

On July 25, 1980, Dr. Slafter, president of the college, served upon appellant the following notice:

"You are hereby notified that the Administration of the College District has recommended to the Board of Trustees that your employment contract be immediately terminated.

"If you feel that the proposed termination of contract is based upon the exercise of any of your constitutional rights, or if you feel you have an expectation of continued employment arising from express or implied rules, agreements or policies of the College District, or if you feel that the termination of your contract will imply a stigma or disability on your reputation which would foreclose your freedom to take advantage of other employment opportunities, you may request prior to August 14, 1980, the following:

"(1) Notice of the reasons for the proposed termination of your contract.

"(2) A hearing before the Board of Trustees.

"(3) To have such hearing conducted within thirty (30) days from and after receipt by the College District of your request.

"(4) At any such hearing to appear with counsel, present witnesses and other relevant evidence, and cross examine adverse witnesses.

"(5) To be provided with the names of any and all witnesses against you.

"(6) To inspect the written findings and results of any such hearing."

On August 12, 1980, appellant sent the following requests to Dr. Slafter:

"TO THE ADMINISTRATION OF THE COLLEGE DISTRICT:

"In reference to the notification of July 25, 1980 that a request has been made to the Board of Trustees that my employment contract be terminated:

"I hereby request notice of the reasons for the proposed termination of contract;

"I hereby request a hearing before the Board of Trustees—said hearing to take place after I have had time to peruse the list of reasons for my termination and to consult with legal counsel as to the method of my defense.

"Be it known at this time:

"I have expressed willingness on three separate occasions to discuss in full with Dr. Slafter whatever evidence is being presented against me.

"My requests for discussion have been denied.

"I have a valid contract with the Board of Trustees signed, sealed and delivered prior to April 15, 1980. I do not believe legal cause exists for alteration of that contract."

On August 29, 1980 appellant received from Dr. Slafter the following response:

"NOTICE OF REASONS FOR TERMINATION RECOMMENDATION AND NOTICE OF HEARING

"TO: Dr. John D. White

"Pursuant to my letter of July 25, 1980 and your request dated August 12, 1980, I herewith give you notice in writing of the reasons for the proposed termination of your contract.

"You have since your arrival at Western Wyoming College, continually *engaged in conduct* which has been characterized by failure to comply with rules and regula-

tions for government of the college, insubordination, failure to cooperate faithfully with the Board of Trustees, the President and their duly authorized agents, and *which has been detrimental to the College and unbecoming your position at the College,* [2] to-wit: [Emphasis added.]

"1. Resistance to established evacuation procedures during a duly authorized and legally required fire drill in the residence hall area.

"2. Violation of regulations prohibiting possession of alcoholic beverages in open containers in general use areas of residence halls.

"3. Use of profane and abusive language toward students, custodial personnel, administrators, and faculty members.

"4. Engaging in combative and menacing behavior toward college employees.

"5. Lack of cooperation in response to a directive that you vacate your quarters in the residency hall pursuant to Board policy.

"6. Failure to pay rent for your residence hall quarters in a timely fashion.

"7. *Soliciting and participating in relationships with students in a manner which is violative of generally accepted community standards.* [Emphasis added.]

"Enclosed herewith you will find copies of all pertinent documents relating to the matter of your proposed termination and the reasons therefor.

"A hearing before the Board of Trustees has been scheduled for 7:00 p. m. on September 10, 1980. If you wish additional time to prepare for that hearing, you should communicate that fact to me at your earliest convenience.

"Also appended hereto are copies of Board policies and rules of practice governing hearings."

Attached to the August 29, 1980 letter, were some thirty pages of material. Included were various college policies as well as letters from specified individuals outlining their grievances against appellant. There were three policies provided which were related to the use of drugs and alcoholic beverages. One of these documents was a copy of Board Policy Code No. 5253:

"STUDENTS

"Use of Alcoholic Beverages

"As a part of the total educational program of Western Wyoming College, the College assumes an obligation to educate its students as to the effect of alcoholic beverages. *The policy of the College prohibits the use, possession or sale of alcoholic beverages on college property whether leased or owned and at college sponsored or supervised functions.* [Emphasis added.]

"Students found to be in violation of this policy, or to be intoxicated, or to have been drinking or using alcoholic beverages on campus or college-supervised property or at college-sponsored events on or off campus will be subject to disciplinary action and/or prosecution in the criminal courts. Due process will be insured through the established judicial process.

"Minors under the age of nineteen (19) in the State of Wyoming are expressly prohibited the use, purchase, or possession of intoxicating beverages. However, those students who are of legal age (over 19) who purchase for or supply intoxicating beverages to minors are in violation and will be prosecuted and/or disciplined.

"As a preventive measure, the College, in cooperation with Associated Students Government, local agencies and organizations, will conduct from time to time educational programs on the use and abuse of alcoholic beverages."

A similar document covered the use of illegal drugs. The other pertinent document described itself only as "*File*: GBCB." It provided:

---

**2.** Same as contract language.

"STAFF CONDUCT

"*Use of Drugs and Alcohol on School Premises by Staff Members*

"In order to protect the health, welfare, and safety of students, no school employee shall be allowed on school premises if the employee possess, dispenses, or in any way transfers possession of, or is under the influence of, or has in his blood stream any alcohol, drug, or any substance prohibited by the Controlled Substances Act of 1971.

"Violation of this policy shall result in suspension or dismissal of the employee."

On September 15, 1980 appellant asked for clarification of what constituted improper student/teacher relationships:

"Bert,

"Mr. Pat Hacker of Cheyenne is perusing the materials given me on September 2. If he takes the case he will contact Mr. Bussart concerning the hearings to commence probably in mid-October.

"Can you please provide us with a copy of the policy governing student/teacher relationships at Western Wyoming College. Please emphasis [sic] the description of relationships disallowed that I have allegedly violated.

"/s/ JDW"

Mr. Hacker never contacted Mr. Bussart.

Dr. Slafter sent appellant the following response that same day:

"Dear Dr. White:

"Appended hereto are written statements furnished by Christopher Meehan, Earl Starks, and Jean Zueck at my request, and received by me on the date noted.

"You are hereby advised that these statements will be used as evidence during your hearing. Additionally, it is the intention of the Administration to call Mr. Meehan, Mr. Starks, and Mrs. Zueck as witnesses at that hearing. You should transmit these documents to your attorney at the earliest possible opportunity.

"I trust that copies of letters addressed to Mike Wilkinson served upon you earlier, together with the enclosed statement of Mr. Meehan, will suffice to meet with your request of this date that I 'emphasis [sic] the description of relationships disallowed that I have allegedly violated.'

"I am also enclosing a copy of a computer printout evidencing your college housing rental delinquencies for the months of July and August, 1980."

The statement of Christopher Meehan accused appellant of having attempted to seduce him upon the occasion of his going to appellant's quarters for dinner and alcoholic drinks—"very much liquor"—and was "drunk both times." Earl Starks' letter addressed problems arising within the music department; appellant was charged with refusing to cooperate. Jean Zueck, an employee at the college, complained in her statement that appellant was disagreeable and had on several occasions made her life unpleasant. At a pretrial hearing it was stipulated by counsel for appellant that these letters could be received in evidence, as could other letters which appellant wished received.

On September 18, 1980, Dr. Slafter's office received appellant's request for still more clarification:

"Bert,

"I would appreciate ALL the evidence against me at the earliest convenience. Your bringing these strange reports out of the woodwork and trickling them to me hardly serves to bring a timely end to this nonsense.

"No, my letters addressed to [the aforementioned student] do not suffice to meet my request for a description of the Western Wyoming College Policy regarding student/teacher relationships. Nor does the statement from Mr. Meehan.

\* \* \* \* \* \*

"/s/ JDW"

The record does not reflect that Dr. Slafter ever responded to this request.

A hearing was set for and held on December 12 and 13, 1980. The signed "Findings of Fact and Conclusion of Law" included:

"6. John White is the leader of and instructor of a rock band sponsored by the

college, pursuant to the terms of his employment with the college and as part of his employment responsibilities with the college.

"7.  The rock band consists of students of the college who are enrolled in the music department among others.

"8.  The rock band makes several road trips during each school year for the purpose of performing in the name of the college.

"9.  John White is in charge of the students, is the person in authority, and is the representative of the college on these trips.

"10.  Some of the students who play instruments in the rock band on these trips are under nineteen years of age.

"11.  The vehicles used for transportation on these trips are owned by the college.

"12.  In the spring of 1980 while on a trip with the band, and while in the college owned vehicle, John White consumed alcohol and marijuana and permitted his students including some who were minors to consume alcohol and marijuana.

"13.  John White purchased alcohol for students while on trips with the band and permitted the consumption of this alcohol while in the college owned vehicle.

"14.  College policy is not to permit alcohol and marijuana consumption on college sponsored outings such as the rock band trips.

"15.  Generally accepted community standards do not permit the consumption of alcohol by minors or the consumption of marijuana.

"16.  John White is guilty of misconduct while on the rock band trips and has engaged in improper student teacher relationships as a result of his conduct on the rock band trips.

"17.  John White is in breach of his employment contract.

"18.  John White is hereby dismissed as a teacher and instructor at the college effective December 13, 1980, for good cause."

In the first notice to appellant dated July 25, 1980, it is noted that he was advised of a right "5. [t]o be provided with the names of any and all witnesses against you."  This was discussed at the pretrial conference:

"MR. BUSSART: One thing your client did not request the names of witnesses, all right?  And so I didn't furnish those although I made it clear in the notice that he had a right to file such a request.  *So I don't want to be facing an appeal here on the grounds we denied him due process by failure to reveal the names of witnesses when, in fact, he didn't request them, and for that matter neither have you.*

"MR. ARON: *Right, and I have no problem with that.*  I think my concern is more what the subject matter of the hearing is than those procedures, because I did have the opportunity to get those from you.  We spoke on the phone.

"MR. BUSSART: Right.

"MR. ARON: I'm satisfied with that.  I guess both of us have a lot of surprise witnesses we didn't request from each other."  (Emphasis added.)

At that time, there was read into the record the names of all witnesses to be produced for the appellee, as was a list of all those for appellant.  Opportunity was accorded appellant to interview witnesses before the start of the hearing.  He only wanted to interview three.  During the opening statement appellee's counsel dwelt at adequate length on the testimony of four students who would testify as to the smoking of marijuana and consumption of liquor on band trips, during which activity appellant was present, aware of and participated, even buying some of the liquor.

During his opening statement, following that of appellee's, counsel for appellant expressed no surprise that evidence of alcohol and drug use on band trips would be presented nor did he move for a continuance for preparation to meet those allegations.  He objected to the first witness testifying to such conduct but primarily on the ground that it went to incidents arising after the charges were itemized in the let-

ter of August 29, 1980.[3] He made a half-hearted objection to the subject matter. He referred to charge "7" as "euphemistic,"[4] but never complained that the charge would not include the conduct on band trips reflected by the evidence.

Following the next witness for appellee, who had testified of alcohol and drug use on the bus and during band tours in the presence of the appellant, when the appellee called the third witness and started inquiring about alcohol and marijuana consumption on the bus trips by students and appellant, appellant's counsel made the following objection:

"MR. ARON: Excuse me. We'll object on the grounds this is repetitious. I assume we're going to recite the same testimony. I believe Counsel has established by testimony something about drinking and other conduct on the bus, and we would request that any additional testimony be restricted to something that is addressed to that. I don't think we have to hear it from every member of the rock band if that's what they intend to do."

Counsel for appellee advised that there would be only one more witness as to such conduct, in addition to the one then testifying. The objection was overruled and the hearing proceeded accordingly.

The last of the appellee's witnesses on charge "7" testified not only as to the alcohol and drug use but also as to a homosexual relationship he had with appellant on campus in appellant's quarters and also on a trip to Reno, Nevada.

Then followed evidence of the school's policies on alcohol and drugs, of which appellant had already been advised, and evidence pertaining to the other six charges set out in the letter of August 29, 1980. Appellee rested.

There was then no motion by appellant to strike the testimony of any of appellee's witnesses, nor to dismiss the charge seven. Appellant then went right into his case and called nineteen witnesses, including the appellant. Dr. White denied any homosexual relationships with anyone, did not dispute the use of alcohol on the bus trips, refused to testify on Fifth Amendment grounds with respect to marijuana, declared that he would not be a "gestapo," took a position that whatever students did was their business, would prefer to abandon the band tours rather than police students in drinking alcohol or smoking marijuana, and pointed out that he was overqualified for the position he held with the college. All of the several students called by appellant who had been on the band trips as well as others praised the work of appellant as an instructor; several letters from various sources around the state introduced by him without objection were complimentary toward appellant and the rock band. On cross-examination, all of the students but one who had been on the trip and who were called by appellant agreed that there had been consumption of alcohol or marijuana or both during the tours (some saw or acknowledged more than others) and that there had been minors present some of them high school students filling out the band and they also had consumed alcohol and marijuana, one of whom had passed out. The mother of the latter who had appeared to support appellant was "stunned" to learn that it was her son who had become uncon-

---

3. This objection is not an issue on appeal, so it will not be considered. Even if error, which we do not decide, it would be harmless in the light of the abundance of evidence of condoned student conduct on the previous trips before August 29, 1980. Rule 7.04, W.R.A.P. No substantial rights were affected.

4. The great lexicographer Webster provides these definitions:
Euphemistic—"relating to or of the nature of euphemism: containing a euphemism."

Euphemism—"1: the substitution of an agreeable or inoffensive word or expression for one that is harsh, indelicate, or otherwise unpleasant or taboo: allusion to an offensive thing by an inoffensive expression—contrasted with *dysphemism*. 2: a polite, tactful, or less explicit term used to avoid the direct naming of an unpleasant, painful, or frightening reality (as *pass away* for *die: underprivileged* for *poor*)."

scious from over-consumption.[5] In a letter stipulated to, written by appellant to a Dan, appellant stated, "[m]y fault in this lies in running a loose ship perhaps * * *."

It appeared that appellant's principal defense was that the accepted "community standard" at Western Wyoming College, in the high schools of Sweetwater County and Rock Springs, and elsewhere in that area within the environs of the college, was alcohol consumption and drug use among the students and others of the younger set.

At the close of all the evidence—there was no rebuttal—appellant did not move for a continuance in order to further defend as to the testimony with respect to alcohol and marijuana on band trips, though appellant did argue that he had no notice that his relationships with students on band trips was included in any of the material which he received.

### I

The Fourteenth Amendment to the United States Constitution and Article 1, § 6 of the Wyoming Constitution both prohibit the state of Wyoming from depriving any person of property without due process of law. This prohibition applies to all branches of the state including the Western Wyoming Community College District. Appellee has conceded that the appellant had "an expectancy of continued employment and a property interest of sufficient magnitude to deserve the protections of due process of law."

What procedures constitute due process have been frequently discussed by the United States Supreme Court. In fact it has concluded that:

"Before a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, 'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.' *Boddie v. Connecticut*, 401 U.S. 371, 379 [91 S.Ct. 780, 786, 28 L.Ed.2d 113]. 'While "[m]any controversies have raged about * * * the Due Process Clause," * * * it is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate [a protected] interest * * *, it must afford "notice and opportunity for hearing appropriate to the nature of the case" *before* the termination becomes effective.' *Bell v. Burson*, 402 U.S. 535, 542 [91 S.Ct. 1586, 1591, 29 L.Ed.2d 90]. * * *" *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570, fn.7, 92 S.Ct. 2701, 2705, fn.7, 33 L.Ed.2d 548 (1972).

■ The notice which must be given must afford the defendant "a reasonable opportunity to know the claims of the opposing party and to meet them." *Morgan v. United States*, 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938). The requirements of the law are met where the notice given the defendant is not misleading and apprises him or her of the issues in controversy. *Intercontinental Industries, Inc. v. American Stock Exchange*, 452 F.2d 935 (5th Cir. 1971), cert. denied 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 81.

■ From the totality of all of the foregoing narrative, we conclude that appellant received adequate notice of what he was expected to defend against and was not subjected to surprise. He was advised long before the hearing of his right to the names of witnesses; he did not take advantage of discovery procedures available. The college policies delivered to him dwelt on alcohol and drugs. As appropriately observed by counsel for the Board of Trustees during the close of the hearing, it is doubtful that the defendant's evidence would have been changed even if specific mention of band

---

5. Some of appellant's student testimony was revealing. One proclaimed alcohol a great relaxant following a performance to "mellow out" from the "hyped up" feeling developed during a concert. Another minor at the time of the tour recalled packing the beer in snow and ice in the bathtub to keep it cool over night. Of the fifteen to seventeen on tour, only two or three did not participate in drinking or smoking marijuana. A high school student on one of the tours testified that "[d]rinking alcohol and maybe smoking marijuana among students was affluent [sic]. It was all over."

trips had been earlier made in connection with charge 7. Clearly apparent in appellant was a lack of concern about student conduct and an attitude that they were only behaving in accordance with his view of the community standard.

It is acknowledged that the proceeding from the beginning was conducted as a contested matter under the Wyoming Administrative Procedure Act. Section 9–4–107, W.S.1977, in pertinent part:

"(a) In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice served personally or by mail * * *

"(b) The notice shall include a statement of:

\* \* \* \* \* \*

"(iv) A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, and thereafter upon application a more definite and detailed statement shall be furnished."

As said in *Glenn v. Board of County Commissioners, Sheridan County*, Wyo., 440 P.2d 1, 4 (1968):

"* * * The important question is whether or not the parties had fair notice of the issues involved. * * *"

In *Jergeson v. Board of Trustees of School District No. 7, Sheridan County*, Wyo., 476 P.2d 481 (1970), where complaint was made by the teacher that the board had failed to give him notice of all the charges against him, this court approved a general charge as opening up a range of incidents in which the teacher was involved and pointed out that the discovery procedure provided in the Wyoming Rules of Civil Procedure [6] was available to him and failure to utilize that means is a significant consideration. In *Kuhn v. Civil Aeronautics Board*, 87 U.S. App.D.C. 130, 183 F.2d 839, 841 (1950), fn. 3, the court referred approvingly to the concept that too much time is spent thinking about the danger of surprising a party. If his case is prepared at all adequately, he will not be surprised. Solicitude for him will simply result in giving him opportunities to delay the case and harass his opponent, and failure to request a continuance by reason of inadequate notice waives any complaint about its insufficiency.

As recently announced in this court's opinion in *Stagner v. Wyoming State Tax Commission*, Wyo., 642 P.2d 1296 (1982), it was stated that the law is elementary that whatever puts a party on inquiry amounts

6. Section 9–4–107(g) and (h), W.S.1977:

"(g) *Application of civil rules.*—(i) In all contested cases the taking of depositions and discovery shall be available to the parties in accordance with the provisions of Rules 26, 28 through 37 (excepting Rule 37(b)(1) and 37(b)(2)(D) therefrom) of the Wyoming Rules of Civil Procedure in effect on the date of the enactment of this act [§§ 9–4–101 to 9–4–115] and any subsequent rule amendments thereto. Provided, however, all references therein to the 'court' shall be deemed to refer to the appropriate 'agency'; all references to the use of the subpoena power shall be deemed references to section 7(c) [subsection (c) of this section]; all references to 'trial' shall be deemed references to 'hearing'; all references to 'plaintiff' shall be deemed references to 'a party.'

"(ii) If a party or other witness refuses to be sworn or refuses to answer any question after being directed to do so by the agency in which the action is pending, the refusal to obey such agency order shall be enforced in the same manner as is provided in section 7(c).

"(h) *Discovery provisions.*—The agency in a contested case shall be subject to the discovery provisions of this section. Provided, however, neither the agency, nor any member, officer or employee shall be required to disclose information which is confidential or privileged under the law and provided no member of the agency shall be compelled to testify or give a deposition in a contested case. Provided, further, that evidence and discovery sought from the agency shall be by written application for same. In the event the agency refuses to furnish same in whole or in part the aggrieved party may apply to the district court for the district in which the hearing, deposition or other proceeding is being or is to be conducted for an order directed to the agency compelling discovery. The court shall enter such order as may be appropriate. The procedure provided for in this subsection for obtaining discovery from the agency shall be exclusive."

to "notice," citing *Rodin v. State, ex rel. City of Cheyenne,* Wyo., 417 P.2d 180, 195 (1966). Appellant was put on inquiry when he was advised that names of witnesses would be furnished upon request, along with being furnished copies of pertinent school regulations dwelling primarily on the use of alcohol and drugs.

■ While appellant claims he was expecting to defend against charges of homosexuality, he was the only one who denied such a relationship and his eighteen other witnesses testified as to other aspects of the charges against him. This is consistent with the policy of Rule 15(b), W.R.C.P.,[7] the application of which is not inconsistent with application to an administrative proceeding where no more should be required. Even if the appellant genuinely felt that he was surprised by the evidence and it was not reflected in the charges, failure to request a continuance on the ground of surprise precludes him from now contending that he was prejudiced. *Batista v. Walter & Bernstein,* Fla.App., 378 So.2d 1321, 1323 (1980); *V. C. Edwards Contracting Co., Inc. v. Port of Tacoma,* 83 Wash.2d 7, 514 P.2d 1381, 1386 (1973); *Schultz v. Cally,* 528 F.2d 470 (3rd Cir. 1975); Wright & Miller, Federal Practice and Procedure: Civil § 1495, pp. 480–482.

In *Montana Power Co. v. Federal Power Commission,* 87 U.S.App.D.C. 316, 185 F.2d 491, 497 (1950), the petitioner complained that it had not been given notice that certain issues were in the case until the day the evidence regarding such issues was offered. The court held the contention without merit since the petitioner had an adequate opportunity to obtain whatever continuances were necessary and had shown no

prejudice attributable to the allegedly defective notice. Proceeding with his defense, without requesting a continuance waives inadequacy of notice. *Brahy v. Federal Radio Commission,* 61 U.S.App.D.C. 204, 59 F.2d 879 (1932); and *Sisto v. Civil Aeronautics Board,* 86 U.S.App.D.C. 31, 179 F.2d 47, 52 (1949).

It must be realized that the basic charge against appellant was that his conduct "has been detrimental to the College and unbecoming your position [as instructor] at the College." We consider that appellant's principal defense went to that contract issue. Another provision of the contract was that he was subject to termination for failure to "govern the students." His position that what the students did, other than perform well during concerts, was none of his business and that he did not intend to police them and be a "gestapo," coupled with his free spirited view that the drinking of alcohol and smoking of marijuana is the community standard, supports the evidence against him and further takes away any validity and spoils the lack-of-notice position he takes.

The Board of Trustees of the college would have been hard pressed to justify their positions as a governing body if they supported such a position backed up by evidence that he practiced those views in his role as an instructor. During their individual public comments made following the evidence and closing arguments, their obligations in that regard were expressed: "we all have to * * * protect the students' health and welfare who I, as a Board member, am ultimately responsible for"; "[t]his is a public institution founded by tax payer's dollars, and the tax payers expect a

---

7. Rule 15(b), W.R.C.P.:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such amendment."

certain standard of behavior which is spelled out in the policy and procedure code that this Board some years ago formulated and review periodically"; instructors must "set a tone and example for these people in their charge, whether they be older or younger, minor or otherwise"; "[m]uch of my behavior as a Trustee is guarded. Guarded because I care about this institution. I expect an instructor to conduct himself in the same manner"; "I also feel that the standards of this community, since I've lived here for forty-two years, are not to condone the use of alcohol by minors, nor flagrant use of drugs"; the "best interests [of the students] were not placed within this particular faculty member"; "has led to the delinquency of a minor * * * and probably most important, has constituted an unsafe and illegal act on the part of Contestant."

This court has spoken with regard to instructor conduct. In *Tracy v. School District No. 22, Sheridan County*, 70 Wyo. 1, 243 P.2d 932 (1950), reh. denied 247 P.2d 153:

> "Relative to the duty of a teacher to conduct himself properly from the moral viewpoint this was also said in the *Baird [v. School Dist. No. 25, Fremont County]* case, 41 Wyo. [451] at page 472, 287 P. [308] at page 315:
>
> " 'It was said in *City of Crawfordsville v. Hays*, 42 Ind. 200, that a teacher agrees "by necessary implication, that while he continues in such employment, his moral conduct shall be in all respects exemplary and beyond just reproach." And not merely good character, but also a good reputation is essential to the greatest usefulness in such a position. *Freeman v. Inhabitants of Bourne*, 170 Mass. 289, 49 N.E. 435, 39 L.R.A. 510. Intrusted as the teacher is with the education of the young, it becomes of primary importance that the principles of right living be by him instilled into them by his example and by his conduct.'
>
> "Supporting the position thus taken, the following language was excerpted from the case of *School District v. Maury*, 53 Ark. 471, 14 S.W. 669 (41 Wyo. at page

473, 287 P. at page 315, Baird case):
> ' "This contract necessarily implies that he is competent to teach properly, and that he will conduct himself in a moral and skillful manner in discharging his undertakings. If he cannot, or will not, do either, he violates the contract, and its termination comes through his breach. We do not mean to say that every act of immorality would be a breach of the contract to justify its termination, but it would be such whenever, from the character or notoriety of the act, it impaired the services of the teacher in properly instructing or advancing the pupils. A teacher might properly instruct, yet his character for morality be so notoriously bad that he would lose the respect of his pupils and fail to advance them. He would not then be a competent teacher, though there were no defect in his learning or facility to impart it." '
>
> "In the text, The Law and Public Education by Hamilton and Mort it is also said (page 358):
>
> " 'The peculiar relationship between the teacher and his pupils is such that it is highly important that the character of the teacher be above reproach. It is well settled, therefore, that a teacher may be dismissed for immorality or misconduct. The Court of Appeals of Kentucky has said that both parents and pupils regard the teacher as an exemplar whose conduct might be followed by his pupils, and the law by necessary intendment demands that he should not engage in conduct which would invite criticism and suspicions of immorality. (*Gover v. Stovall*, 237 Ky. 172, 35 S.W.2d 24). Even charges of or reputation for immorality, although not supported by full proof, might in some cases, be sufficient ground for removal. Not merely good character but good reputation is essential to the greatest usefulness of the teacher in the schools.' " 243 P.2d at 936–937.

See also, *Jergeson v. Board of Trustees of School District No. 7, Sheridan County,* supra.

It would be improper for us to approve lesser community standards, with respect to alcoholic beverages and drugs, than those established by the legislature. Section 12–6–101(a), (b), (c) and (d), W.S.1977 [8] prohibits the furnishing of alcoholic beverages to those under 19, prohibits possession of such beverages by persons under 19 and prohibits aiding and abetting any violation of the section. The possession and delivery of controlled substances is even more seriously viewed by the legislature. Sections 35–7–1031(a) and (c), 35–7–1036, and 35–7–1039, W.S.1977.[9] Marijuana is a Schedule I con-

8. Section 12–6–101(a) through (d), W.S.1977:
"(a) Every person who sells, furnishes, gives or causes to be sold, furnished or given away any alcoholic liquor or malt beverage to any person under the age of nineteen (19), who is not his legal ward, medical patient or member of his own immediate family, is guilty of a misdemeanor.
"(b) Any person under the age of nineteen (19) who has any alcoholic or malt beverage in his possession or who is drunk or under the influence of alcoholic liquor, malt beverages or drugs on any street or highway or in any public place is guilty of a misdemeanor. This subsection shall not apply to possession of alcoholic or malt beverages by a person under the age of nineteen (19):
"(i) When making a delivery of alcoholic or malt beverages pursuant to his employment; or
"(ii) Who is in the physical presence of his parent or legal guardian.
"(c) Any person under the age of nineteen (19) who attempts in any manner to purchase alcoholic or malt beverages, who falsifies any identification or uses any false identification in order to obtain alcoholic or malt beverages is guilty of a misdemeanor.
"(d) Any person who violates this section, or aids, abets or incites any violation hereof, is guilty of a misdemeanor and upon conviction shall be fined not more than one hundred dollars ($100.00), imprisoned for not more than six (6) months, or both."

9. Section 35–7–1031(a) and (c), W.S.1977:
"(a) Except as authorized by this act [§§ 35–7–1001 to 35–7–1055], it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:
"(i) A controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than twenty (20) years, or fined not more than twenty-five thousand dollars ($25,000.00), or both;
"(ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both;
"(iii) A substance classified in Schedule IV, is guilty of a crime and upon conviction may be imprisoned for not more than two (2) years, fined not more than two thousand five hundred dollars ($2,500.00), or both;
"(iv) A substance classified in Schedule V, is guilty of a crime and upon conviction may be imprisoned for not more than one (1) year, fined not more than one thousand dollars ($1,000.00), or both.

\* \* \* \* \* \*

"(c) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of, a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act [§§ 35–7–1001 to 35–7–1055]. Any person who violates this subsection is guilty of a misdemeanor and may be imprisoned in the county jail not more than six (6) months and fined not more than one thousand dollars ($1,000.00). Any person convicted for a third or subsequent offense under this subsection shall be imprisoned in the state penitentiary for not more than five (5) years, and fined not more than five thousand dollars ($5,000.00), or both."
Section 35–7–1036, W.S.1977:
"Any person eighteen (18) years of age or over who violates section 31(a) [§ 35–7–1031(a)] by distributing a controlled substance listed in Schedules I or II which is a narcotic drug to a person under eighteen (18) years of age who is at least three (3) years his junior is punishable by the fine authorized by section 31(a)(i) [§ 35–7–1031(a)(i)], by a term of imprisonment of up to twice that authorized by section 31(a)(i), or both. Any person eighteen (18) years of age or over who violates section 31(a) by distributing any other controlled substance listed in Schedules I, II, III, to a person under eighteen (18) years of age who is at least three (3) years his junior is punishable by the fine authorized by section 31(a)(ii) [§ 35–7–1031(a)(ii)], by a term of imprisonment up to twice that authorized by section 31(a)(ii), or both. Any person eighteen (18) years of age or over who violates section 31(a) by distributing any controlled substance listed in Schedule IV to a person under eighteen (18) years of age who is at least three (3) years his junior is punishable by the fine authorized by section 31(a)(iii) [§ 35–7–1031(a)(iii)], by a term of imprisonment up to twice that authorized by section 31(a)(iii), or both. Any person eigh-

trolled substance. Section 35–7–1014(d)(x), W.S.1977. There are involved federal violations as well. The law sets the standards of the community, not those who violate it.

We are satisfied that under all of the circumstances of this case appellant had full notice of what he would be expected to defend against and was not prejudiced. There was no abuse of discretion.

We need not specially address appellant's other issues since they were premised upon a finding of lack of fair notice; however, they may have been touched on in part incident to disposition of the first issue.

Affirmed.

THOMAS, Justice, specially concurring.

I agree with the result reached by the majority of the court in this case. There is, however, one aspect of the case about which I have a special concern. The majority chooses not to deal with the question of the receipt of evidence concerning misconduct on the October band tour.

In my view the receipt of such evidence clearly was erroneous, and administrative agencies, in matters such as this, should not in any way be encouraged to adopt a practice of receiving evidence of misconduct which has not been charged in the notice furnished the respondent. It is my view that this is a problem which this court dealt with in *Fallon v. Wyoming State Board of Medical Examiners*, Wyo., 441 P.2d 322 (1968), and that the court there reached the proper conclusion. One of the prerequisites of a fair hearing is that the accused individual be appraised of the charge which is brought against him so that he may have an adequate opportunity to defend. The admission into evidence of misconduct which is not alluded to in the notice, even though no apparent reliance is placed upon such evidence in the findings of fact made by the hearing body, deprives the respondent of an opportunity for a fair hearing. It well may be that the respondent could refute the evidence of extraneous misconduct, but did not come prepared to do so because there was no reason apparent from the notice to be prepared to meet such information.

I concur in the result reached in this case only because I am persuaded that the evidence of misconduct on the spring band tours was overwhelming and that there could have been no prejudice to Dr. White because of the admission of information relating to the October band tours. Even Dr. White conceded most of what occurred with respect to the spring band tours, and given that state of the record the board of trustees had no alternative but to dismiss him. In my view, however, administrative agencies need to be fairly cautioned that it is far better not to admit evidence of extraneous misconduct which has not been noticed in order to preserve the legal integrity of the proceedings.

ROSE, Chief Justice, dissenting.

I dissent because I cannot agree that appellant was granted his rights of procedural due process.

In my opinion, the appellant was not properly notified by the board with respect to the issues concerning which he was expected to defend himself at his termination hearing. In concluding that the notice was adequate, the majority of the court establish a standard that the notice requirements of § 9–4–107(a) and (b), W.S.1977, were satisfied by whatever places a party on "inquiry." The majority say that once the party has been placed upon "inquiry," the

---

teen (18) years of age or over who violates section 31(a) by distributing any controlled substance listed in Schedule V to a person under eighteen (18) years of age who is at least three (3) years his junior is punishable by the fine authorized by section 31(a)(iv) [§ 35–7–1031(a)(iv) ], by a term of imprisonment up to twice that authorized by section 31(a)(iv), or both."
Section 35–7–1039, W.S.1977:

"Any person who knowingly or intentionally uses or is under the influence of a controlled substance listed in Schedules I, II or III except when administered or prescribed by or under the direction of a licensed practitioner, shall be guilty of a misdemeanor and shall be punished by imprisonment in the county jail not to exceed ninety (90) days or a fine not to exceed one hundred dollars ($100.00), or by both."

burden then shifts to him or her to ferret out the essence and the details of the charges. The court goes on to say that the appellant here did not satisfy this obligation in this case. For me, the holding flies in the face of past standards established by this court and I am therefore compelled to express my disagreement.

As noted by the majority, the central issue raised by appellant concerned his claim that the board had failed to adequately notify him of the charges upon which it relied in terminating his contract of employment. This issue is not new to this court.

In *Glenn v. Board of County Commissioners, Sheridan County*, Wyo., 440 P.2d 1 (1968), when confronted with a claim of insufficient notice, we said:

> "The important question is whether or not the parties had *fair notice of the issues involved.*" (Emphasis added.) 440 P.2d at 4.

After posing the question, we held that the failure of the appellants to raise such an issue prior to or at the hearing before the board, precluded further review of their contentions.

We were faced with similar questions in *Jergeson v. Board of Trustees of School District No. 7*, Wyo., 476 P.2d 481 (1970). There we upheld a notice which had communicated the charges supporting the board's institution of termination proceedings in a very general sort of way. However, the holding in that case revolved around the failure of appellant to request a more specific or detailed statement from the administration.

Then in *Board of Trustees, Laramie County School District No. 1 v. Spiegel*, Wyo., 549 P.2d 1161 (1976), we once again turned our attention to a challenge to the notice given to a teacher faced with termination proceedings. In *Spiegel*, the appellee was charged by the notice with employing teaching methods which were in conflict with the "philosophy" of the administration and board. The teacher asked the board to give him a more definite and detailed statement concerning the facts which were known to the board and which supported the charge, and this request was denied. In affirming the district court's reversal of the board's action, we held, as a matter of statutory and constitutional law, that the appellee had a right to more detail and the denial of appellant's motion by the board required reversal. We said:

> "The motion should have been granted. The appellee had a statutory and constitutional right to have it granted. For the contestant to have to defend against these vague and indefinite charges was a denial of not only his rights under the statute, but also a constitutional denial of due process." 549 P.2d at 1171.

Finally, in *Powell v. Board of Trustees, Crook County School District No. 1*, Wyo., 550 P.2d 1112 (1976), we were faced with a situation where the appellant had been dismissed by the board on charges with respect to which he had received no notification. Before the hearing, appellant had been charged with violating various policies having to do with student discipline. However, after the hearing, the board based its decision on appellant's inability to control student conduct. In reversing the board's decision we said:

> "In order to satisfy the minimum rights of the appellant he must have had adequate, specific notice of those things with which he was being charged. This is a due-process guarantee which allows him to prepare for his hearing.

> "We said in *Glenn v. Board of County Commissioners, Sheridan County*, Wyo., 440 P.2d 1, 4 (1968)

> " '. . . The important question is whether or not the parties had fair notice of the issues involved . . .'

> "Did Powell have fair notice that he could be found guilty of a student-discipline inadequacy (inability to control conduct), concerning which there had been no charges made, even though he were to successfully defend against the charge of failure to follow student-disciplinary policies of the Board? We hold that he did not.

"What is 'fair notice' under *Glenn v. Board of County Commissioners,* supra, as applied to this case? If Mr. Powell was going to be required to defend a student-disciplinary charge, it was necessary to specifically inform and notify him as contemplated by § 9–276.25(a) and (b)(4) and § 21.1–160(b), supra. He had a right to believe that the only student-discipline complaint was embraced in the charge of not following the Board's discipline policy. According to the manner in which the issues were framed, there is no reason to believe he should have guessed that there might be additional dissatisfaction with his student-disciplinary methods over and above and outside the charge that he had failed to follow the District's student-disciplinary policy." 550 P.2d at 1117.

It is clear from the decisions that, as a matter of right, the appellant was entitled to specific notice of those things with which he was being charged, and, upon request for a more definite [1] statement, the agency was required to communicate to appellant specific information supporting any claimed improprieties. With this standard in mind, I undertake a review of the relevant matters and will express my conclusions as to why I believe appellant was denied due process of law.

I will limit my inquiry to Charge No. 7 which was communicated to appellant on August 29, 1980. This charge stated:

"7. Soliciting and participating in relationships with students in a manner

which is violative of generally accepted community standards."

The reason for limiting inquiry to this charge is because, in dismissing appellant for his conduct on school band trips, the board relied on Charge No. 7 which had been included within the Notice of Reasons for Termination Recommendation and Notice of Hearing. Thus, the board determined that appellant's alleged improper conduct was violative of "generally accepted community standards." So the real question, for me, concerns whether or not appellant was given adequate notice by the board to the effect that he would be expected to defend against allegations surrounding his conduct on school band trips under Charge No. 7. I conclude that he was not and that the board's failure to respond to his demands for a more detailed statement was reversible error under *Spiegel* and *Powell,* supra.

As noted previously, appellant was sent the Notice of Termination on August 29, 1980. Included within that notice was Charge No. 7. After receiving the above document, appellant requested that Dr. Slafter clarify and delineate the student-teacher relationships that he had allegedly violated. This request was forwarded on September 15, 1980. On that same day, Dr. Slafter sent appellant a response which indicated that the administration had various letters from students, including the earlier one attached to the original notice, which indicated that appellant had solicited and participated in homosexual relationships

---

1. As the majority opinion notes, § 9–4–107(a) and (b) provides the standards applicable to giving a party notice in contested cases. That section reads in pertinent part:

"(a) Notice to be given; service of notice.— In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice served personally or by mail. Where the indispensable and necessary parties are composed of a large class, the notice shall be served upon a reasonable number thereof as representatives of the class or by giving notice by publication in the manner specified by the rules or an order of the agency.

"(b) Statement in notice.—The notice shall include a statement of:

"(i) The time, place and nature of the hearing;

"(ii) The legal authority and jurisdiction under which the hearing is to be held;

"(iii) The particular sections of the statutes and rules involved;

"(iv) A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, and thereafter upon application a more definite and detailed statement shall be furnished."

with his students. At this point, on the administration's own admission, the charge relating to impermissible relationships violative of community standards (Charge No. 7) was narrowed to issues surrounding the alleged homosexual preference of the appellant. No mention or reference was made to any conduct on band trips. Notwithstanding this, on September 18, 1980, appellant once again requested further clarification concerning specific college policies on student-teacher relations which the administration believed he had violated. He received no response to this request.

Up to that time, the appellant had received no specific information concerning alcohol or drug use except for various copies of college regulations regarding the use of alcohol and drugs in college facilities. No specifics regarding appellant's alleged activities with drugs or alcohol were ever communicated to him even though he made two requests for further clarification. The only specific notice he ever received concerning Charge No. 7 had to do with alleged homosexual relationships with students.

Given these facts, I can reach no other conclusion but that appellant was never given adequate notice of the specific charges which formed the basis of the board's decision, even though he had made several requests for that information. Under *Spiegel,* supra, and *Powell,* supra, the facts clearly required reversal of the board's decision since appellant's statutory (§ 9–4–107(b)(iv)) and constitutional due-process rights were violated.

Specification of the issues is one of the basic elements of fair procedure and fairness dictates that a party to a contested case be apprised of the facts beforehand. Schwartz, Administrative Law, § 97, p. 274 (1976). Here, the board and college administration did not act fairly, and even if the evidence, in the final analysis, clearly supported appellant's firing, the fact that appellant's rights to due process were violated should not be ignored. In my judgment, the majority opinion disregards our prior case law which is directly in point, solely because of the overwhelming evidence actu-

ally supporting the board's decision. I cannot, however, support their conclusions since I am convinced the procedures utilized to reach that result violated appellant's minimal rights to due process of law.

For these reasons, I would have reversed.