**IRVIN L. YOUNG FOUNDATION, INC., Plaintiff,**

v.

**Evelyn C. DAMRELL, personal representative of the Estate of Frank Damrell, Defendant.**

Civ. No. 82–242–B.

United States District Court, D. Maine.

May 1, 1985.

David Smart, Portsmouth, N.H., John A. Macoul, Salem, N.H., Herbert L. Schultz, Lawrence, Mass., for plaintiff.

Jay S. Blumenkopf, John A. Graustein, Drummond Woodsum Plimpton & MacMahon, P.A., Portland, Me., William W. Logan, Soule & Soule, Wiscasset, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This action, commenced on November 12, 1982, seeks enforcement of a Massachusetts State Court default judgment in the amount of $148,511.19 (including prejudgment interest) rendered against Frank Damrell, the original Defendant in this action. Pursuant to an *ex parte* motion by Plaintiff, Irvin L. Young Foundation, Inc., accompanied by the affidavit of Plaintiff's counsel, the Magistrate issued an order on November 12, 1982 attaching, in the amount of $150,000, Maine real estate owned in joint tenancy by Frank Damrell and Evelyn Coates Damrell at the time the suit was commenced. The Defendant answered the complaint on December 8, 1982, but did not move, at that time, pursuant to D.Me.R. 14(f), for dissolution or modification of the attachment.

On March 28, 1983 Plaintiff moved for summary judgment in the amount of $148,-533.69, plus $33,073.51 in judgment interest accruing from the entry of judgment in the Massachusetts action on February 1, 1980 to the commencement of this action, as well as interest and costs incurred since the commencement of this action. Defendant objected to the motion and, on April 7, 1983, moved (1) to stay proceedings in this action until disposition of a motion for relief from judgment in the Massachusetts court which had rendered the judgment; (2) to continue the hearing on the motion for summary judgment until after June 20, 1983, following the completion of discovery in accordance with the Court's deadline; and (3) to dissolve the *ex parte* attachment.

Although a hearing date of June 22, 1983 was set for the pending motions, prior to that date the Magistrate, upon agreement of counsel, granted Defendant's motion to continue the hearing until resolution of the pending Massachusetts proceedings wherein Defendant had sought relief from judgment. On April 12, 1984, hearing was had before the Magistrate on Plaintiff's motion for summary judgment, Defendant's motion to stay, Defendant's request for continuance of the hearing on the motion for summary judgment, and Plaintiff's motion to add Evelyn C. Damrell, the personal representative of the estate of Frank Damrell (Mr. Damrell being then deceased), as a party Defendant.

The Magistrate, upon learning that Defendant had taken no action to bring the Massachusetts motion on for hearing,[1] vacated his June 17, 1983 order of continuance and on May 31, 1984 issued his Report of Hearings on Motions. On June 18, 1984 Defendant filed objections to (1) the Magistrate's order denying Defendant's motion for stay; (2) the Magistrate's order denying Defendant's motion to dissolve the *ex parte* attachment; (3) the Magistrate's order denying Defendant's request for continuance of the hearing on the motion for summary judgment; and (4) the Magistrate's recommended decision granting

---

1. Frank Damrell stated that he learned of the Massachusetts judgment against him when, in November 1982, he was served with the complaint in this enforcement action. Although five months after the commencement of this suit he moved for relief from the Massachusetts judgment, that motion has not yet been heard nor, apparently, has Defendant sought a hearing on that motion. No reason is offered by the Defendant for her delay in pursuing the motion in the Massachusetts court during the almost two and one-half years that this action has been pending.

summary judgment for Plaintiff. On June 21, 1984 the Court granted Defendant's motion of June 18, 1984 for an extension of time in which to file a memorandum in support of these objections.

### Motion For Summary Judgment

In support of its motion for summary judgment, Plaintiff has submitted, *inter alia,* a copy of the Massachusetts judgment, attested in accordance with the requirements of 28 U.S.C. § 1738, and an affidavit of Plaintiff's president, Mrs. Irvin L. Young, stating that the Massachusetts judgment issued on February 1, 1980 remains unsatisfied. The original Defendant admitted in his answer that the judgment remains unsatisfied.

In opposition to the motion for summary judgment, Defendant has submitted, *inter alia,* the affidavit of Frank K. Damrell, now deceased, which contains the following averments: Acting in his capacity as president and treasurer of Eastern Tag and Label Corporation [ETLC], Frank K. Damrell executed three promissory notes in favor of Plaintiff. In April 1975, the Plaintiff commenced the Massachusetts action on those notes; and upon being served with process in the Massachusetts action Damrell referred the matter to an attorney, John Q. Irwin, Esquire, in the belief that he (Damrell) was not personally liable on the notes. Damrell was never advised of the proceedings in the Massachusetts action. Although Irwin was notified of the default judgment, Damrell did not learn of the Massachusetts default judgment against him until the commencement of the present action in this Court. Damrell also states that Irwin, without Damrell's knowledge or consent, agreed to a dismissal of the Massachusetts action against ETLC, leaving

Damrell as the sole Defendant in that action. In addition, he avers that Irwin was suspended from the practice of law at the time of the default judgment.[2]

The "full faith and credit" statute, 28 U.S.C. § 1738, requires that this Court accord the Massachusetts judgment "the same full faith and credit ... as [it has] by law or usage in the courts of [Massachusetts]." This rule is not without limitation however. Full faith and credit will not be given if the Court which rendered the judgment did not have jurisdiction of the parties or the subject matter. *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Assoc.,* 455 U.S. 691, 704–05, 102 S.Ct. 1357, 1365–66, 71 L.Ed.2d 558 (1982). Also, a judgment rendered in violation of due process is not entitled to full faith and credit. *See Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1027–29 (5th Cir. 1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983).

Although there is no claim that the Massachusetts court was without either personal or subject matter jurisdiction, Defendant asserts that the judgment violates due process and that it is therefore void. In support of this claim Defendant asserts that Damrell was "unaware that the Massachusetts case was still pending against him personally and was never notified that the Massachusetts case was scheduled for trial. Moreover, he was never notified that a default or default judgment had been entered against him in that case." Defendant's Memorandum of April 11, 1983, at 23. Defendant also argues that there can be "no doubt" that the Massachusetts action against Damrell in his individual capacity was meritless, and that, therefore, the de-

---

**2.** Damrell's statements concerning Irwin's actions in the Massachusetts case and Irwin's suspension from the practice of law do not appear to be made on personal knowledge as required by Fed.R.Civ.P. 56(e). However, the Damrell affidavit is accompanied by a copy of the Order of Dismissal (of the claim against ETLC) in the Massachusetts action, as well as a copy of the Order of Temporary Suspension (In re John A. Irwin) dated August 31, 1978 and a copy of the

Memorandum of Decision and Judgment (In re John A. Irwin) dated August 14, 1979. Although Damrell's statements arguably are hearsay and may be inadmissible at trial, plaintiff has not objected to the Court's consideration of those statements. Instead, plaintiff argues, and the Court agrees, that Irwin's conduct in the Massachusetts action does not affect the enforceability of the as-yet unaltered Massachusetts judgment.

fault judgment was "wrongfully and fraudulently obtained."

For the most part, the Defendant's argument and affidavits are directed to the merits of the underlying cause of action in the Massachusetts case and to the motion for relief from judgment, under Mass.R. Civ.P. 60(b)(6), currently pending in the Massachusetts court. The issue before *this* Court is whether the Massachusetts judgment, which remains in full effect, is entitled to full faith and credit in the present action.[3]

■ Initially it is necessary to determine whether the Rule 60(b)(6) motion pending in the Massachusetts Court affects the finality of the February 1, 1980 judgment. Mass.R.Civ.P. 60(b) is identical to Fed.R. Civ.P. 60(b). Both provide that "[a] motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation." Thus, the pending Massachusetts motion for relief from default judgment does not preclude enforcement of that judgment in the present action. *See* 7 J. Moore and J. Lucas, *Moore's Federal Practice* ¶ 60.29 (2d Ed.1983).

The basis for Defendant's due process challenge to the Massachusetts judgment is Damrell's failure to receive notice that: 1) the case was still pending against him in his individual capacity; 2) the case was scheduled for trial; and 3) a default judgment had been entered against him. But there is no contention that Damrell's counsel of record in the Massachusetts action did not receive proper notice of the proceedings. Indeed, Defendant maintains that Damrell's attorney received a copy of the default judgment but that counsel never advised the decedent Damrell. The crux of Defendant's due process argument is that the attorney failed to protect Damrell's interests and did not keep Damrell advised of the progress of the suit. It is also asserted that Damrell's attorney was

suspended from the practice of law at the time the default judgment was entered on February 1, 1980.

In a Florida federal court action brought to enforce a California state court judgment, the Fifth Circuit summarized the applicable due process principles as follows:

> The due process requirements in a civil case where only property interests are at stake are, of course, much less stringent than in a criminal case involving life and liberty interests. Thus ordinarily all that due process requires in a civil case is proper notice and service of process and a court of competent jurisdiction; procedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack. *See Windsor v. McVeigh*, 93 U.S. [ (3 Otto) ] 274, 23 L.Ed. 914 (1876) .... However, "a departure from established modes of procedure can render the judgment void," *Windsor, supra*, 93 U.S. at 283, where the procedural defects are of sufficient magnitude to constitute a violation of due process, or, as sometimes more circularly put, where the defects are "so unfair as to deprive the ... proceedings of vitality," *Eagles v. U.S.*, 329 U.S. 304, 314, 67 S.Ct. 313, 319, 91 L.Ed. 308 (1946), or where the procedural irregularities are serious enough to be deemed "jurisdictional," *Yale v. National Indemnity Co.*, 602 F.2d 642, 644 (4th Cir.1979)....

*Fehlhaber v. Fehlhaber*, 681 F.2d at 1027.

■ First, Defendant contends that there was a meritorious defense to the Massachusetts action and that Plaintiff's counsel in that action (who is also Plaintiff's counsel in this action) knew of this defense but pursued a default judgment nevertheless. The existence of a meritorious defense might be a necessary, though not sufficient, predicate for relief from the default judgment under Mass.R.Civ.P.

---

**3.** Defendant has not sought equitable relief from this Court independent of the relief now sought from the Massachusetts Court, nor would such a request, based on the alleged negligence of one's own counsel, be within the scope of the Court's "independent and substantive equitable jurisdiction." *See Indian Head National Bank v. Brunelle*, 689 F.2d 245, 250 (1st Cir.1982).

60(b)(6), as it is under Fed.R.Civ.P. 60(b)(6). *See American Metals Service Export Co. v. Ahrens Aircraft,* 666 F.2d 718 (1st Cir. 1981). Defendant, however, has pointed to no authority, nor can the Court find any, to support the argument that a default judgment was "improperly obtained," and thus invalid, because the underlying claim was meritless. *See Milliken v. Meyer,* 311 U.S. 457, 462, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940) [full faith and credit precludes inquiry into merits].

In support of her due process argument Defendant points to *Bass v. Hoagland,* 172 F.2d 205 (5th Cir.), *cert. denied,* 359 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949). In *Bass* a default judgment from the Kansas federal district court was denied enforcement in the Eastern District of Texas by the Fifth Circuit. In *Bass* the Defendant, whose attorney had previously withdrawn from the case, failed to appear for the trial. The *Bass* holding, which has been subject to criticism, See Note, *Extending Collateral Attack: An Invitation to Repetitious Litigation,* 59 Yale L.J. 345, 348–51 (1950), has recently been limited by the Fifth Circuit to its particular facts:

> In *Bass,* we found that the trial court had erred in entering default judgment for the full amount of the claim where the defendant had no notice of default and no opportunity to present evidence on the amount of damages. *Id.* at 209–10. Although we held there that the Defendant had been denied due process, we have recently had occasion to clarify that holding. In *Fehlhaber v. Fehlhaber,* 681 F.2d 1015 (5th Cir.1982) *cert. denied,* —— U.S. ——, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983), we pointed out that our finding in *Bass* that due process had been denied resulted from the *combined* circumstances of that case: the right to a jury trial was denied though demanded;

default was entered solely as a result of Bass' attorney's failure to appear for trial; Bass was never provided with any notice of the default (which apparently was entered *sua sponte* by the Court); the Court found notice had been fraudulently withheld by the opposing party for 2½ years after entry of judgment; and finally, no trial or evidence was heard as to the amount of damages. *Bass, supra,* 172 F.2d at 208–09.

*Williams v. New Orleans Public Service, Inc.,* 728 F.2d 730, 735 (5th Cir.1984). It is also notable that *Bass* did not involve the "full faith and credit" statute, 28 U.S.C. § 1738, and essentially amounted to one federal court examining the circumstances surrounding the issuance of a judgment by another federal court. Indeed, one of the bases for refusing enforcement of the judgment in *Bass* was that the notice and hearing provisions of Fed.R.Civ.P. 55(6) were not complied with. *Bass, supra,* 172 F.2d 208–09.

Defendant does not point to any procedural irregularities in the Massachusetts action.[4] Unlike the situation in *Bass,* all of Defendant's complaints are directed at the conduct of Damrell's attorney, not at the procedures of the Massachusetts court.

A point meriting somewhat closer attention is Defendant's claim that Damrell's attorney, John A. Irwin, was suspended from the practice of law on August 3, 1978 and remained suspended until February 27, 1980, a few weeks after the judgment of February 1, 1980. The final disciplinary order of August 14, 1979 permitted Irwin to petition for reinstatement after August 31, 1979; however, he did not seek reinstatement until December 31, 1979.

Although on September 14, 1984, the Court ordered briefing on this unusual question, no authority has been presented by Defendant, and none has been discovered by the Court, to support her claim that a

---

**4.** Defendant Frank Damrell attests: "I do not recall being served personally in that case, although I do believe I recall being served as an officer of the ETLC." Damrell Affidavit, ¶ 9. Since Defendant was served with process in some capacity, it was incumbent upon him or his attorney to discover in which capacity and,

if appropriate, to challenge the sufficiency of that service. Moreover, Defendant's assertion that he was not *aware* that he was being sued in his individual capacity falls far short of a claim that he did not in fact receive due notice of the action against him.

court denies due process by sending notices to a party's attorney of record where that attorney has been suspended during the pendency of a suit. As Defendant appears to acknowledge, it was the attorney's responsibility to notify his client *and the court* of his suspension.[5] Massachusetts Supreme Judicial Court Rule 4:01 § 17.[6] Defendant also acknowledges that it is the suspended attorney's duty to pass on notices to the client. Defendant's Memorandum of January 3, 1985, at 4. To accept Defendant's argument—that Damrell was denied due process because he was not advised of the suspension and because the Massachusetts court's notices were provided to the suspended attorney rather than to Damrell personally[7]—would penalize Plaintiff for the deficient performance of defense counsel. It would also penalize Plaintiff for Damrell's own admitted failure to communicate with his attorney between 1975, when the Massachusetts action was commenced, and the commencement of this action on the judgment in November of 1982. While Defendant may have an action against Damrell's attorney, no due process violation has been shown.

---

5. There is no assertion that either the Massachusetts Court or opposing counsel in the Massachusetts action was aware of the suspension of Irwin. *Compare Bass v. Hoagland, supra,* 172 F.2d at 209 [due process violation where, *inter alia,* notice of trial was sent only to attorney who had withdrawn from the case]. In her most recent memorandum Defendant asserts for the first time that the Massachusetts Court rendering the judgment in question must have known of Attorney Irwin's suspension because such notice is always provided by the Massachusetts Supreme Judicial Court. Section 17(5) provides that notification of suspension or disbarment will be provided to the Clerk of each Massachusetts Court in which the Board "has reason to believe the disciplined attorney has been engaged in practice." The rule does not mandate that all courts be informed, so there is no reason to assume that the issuing court in this case was necessarily one in which the Board had reason to believe Irwin had been engaged in practice. No proof in the form of affidavit or otherwise has been offered that the Court rendering the Massachusetts judgment was actually notified of the attorney's suspension.

6. § 17. Action by Disbarred or Suspended Attorneys

(1) *A disbarred or suspended attorney shall take action (a) to notify all his clients of his disbarment or suspension and his consequent inability to act as an attorney after the effective date of his disbarment or suspension;* (b) to notify each client who is involved in pending litigation or administrative proceedings[,] *and the attorney or attorneys for each adverse party* in such matter or proceeding, of his disbarment or suspension and consequent inability to act as an attorney after the effective date of his disbarment or suspension; (c) to advise each client promptly to substitute another attorney or attorneys in his place or to seek legal advice elsewhere; and (d) to give such other notice of the court's action as the court may direct in the public interest.

(2) Whenever the court deems it necessary, it may appoint (at the expense of the disbarred or suspended attorney or at public expense) a commissioner to take appropriate action in lieu of, or in addition to, the action directed in subsection (1) of this section.

(3) *It shall be the responsibility of the disbarred or suspended attorney to give notice of the disbarment or suspension forthwith to each court or agency in which he appears for any party.* Any notice of the disbarment or suspension thus given to the court or agency (or to the attorney or attorneys for an adverse party) shall state the place of residence of the client of the disbarred or suspended attorney, and shall identify the particular proceeding.

(4) Unless the court orders otherwise, *orders imposing suspension or disbarment shall be effective thirty days after entry.* The disbarred or suspended attorney, after entry of the disbarment or suspension order, shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature. During the period from the entry date of the order and its effective date, however, he may wind up and complete, on behalf of any client, all matters which were pending on the entry date.

(5) The Board shall promptly transmit a copy of the order of suspension or disbarment to the Clerk of each court in the Commonwealth, State or Federal, in which it has reason to believe the disciplined attorney has been engaged in practice....

(Emphasis added.)

7. In addition to complaining of a lack of personal notice of matters occurring in the proceedings, Defendant points to Irwin's conduct in agreeing to a dismissal of claims against the corporate codefendant in the Massachusetts action on September 20, 1979. This action was taken *before* the order of suspension of August 31, 1978 and became effective twenty days later. *See* Massachusetts Supreme Judicial Court Rule 4:01 § 17(4).

■ Given the narrowly circumscribed parameters for refusing to give full faith and credit to a state court judgment, *see Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, the lack of any dispute as to Defendant's notice of the Massachusetts suit, and the absence of authority or compelling reason for finding a due process violation by the Massachusetts Court in continuing to communicate notices to Damrell through his attorney of record even after that attorney's suspension, the Court concludes that Defendant has not asserted an adequate basis on which to deny enforcement of the Massachusetts judgment. To hold otherwise would permit the Defendant to benefit from Damrell's total abdication of any responsibility for keeping apprised of the progress of the Massachusetts suit and Defendant's own apparent dilatoriness in pursuing to hearing a 60(b) challenge to the judgment in the issuing court, where Defendant's contentions concerning Irwin's misconduct and the other circumstances surrounding the entry of the default judgment might properly be explored.

In support of its motion for summary judgment, Plaintiff has filed an appropriately attested copy of the Massachusetts judgment and affidavits confirming that the judgment is in full force and effect and remains unsatisfied. Defendant's affidavits, though arguably supporting a claim for relief from judgment in the Massachusetts Court, do not raise a genuine issue as to any fact material to the enforceability of the Massachusetts judgment in this Court.

Therefore, upon its *de novo* review of the Plaintiff's motion for summary judgment, the Court concludes that the Plaintiff is entitled to summary judgment.[8]

### Objection To Magistrate's Order

■ In addition to reporting his recommended decision on Plaintiff's motion for summary judgment, in his May 31, 1984 Report of Hearing on Motions the Magistrate ruled on a number of other pretrial matters. Because these other matters were "not dispositive of a claim or defense of a party," a notice of appeal of the Magistrate's rulings thereon was required to be filed "within 10 days after the entry of the order." Fed.R.Civ.P. 72(a). *See Jacobsen v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo*, 594 F.Supp. 583 (D.Me.1984). Defendant filed objections, which the Court will treat as a notice of appeal, on June 18, 1984, 18 days after the entry of the Magistrate's report. No enlargement of time in which to file the notice of appeal, pursuant to Fed.R.Civ.P. 6(b), was sought by Defendant. Defendant's appeal from the Magistrate's disposition of Defendant's motion to stay, motion to dissolve *ex parte* attachment, and request for continuance of the hearing on the motion for summary judgment were not timely filed; therefore, there is no entitlement to review by this Court under Rule 72(a). Moreover, the Court having determined that Plaintiff's motion for summary judgment should be granted, the Defendant's motion to stay and motion to dissolve *ex parte* attachment are thereby mooted.[9]

8. Plaintiff seeks judgment in the amount of the Massachusetts judgment (plus costs), as well as judgment interest from the date of that judgment, February 1, 1980, to the date of the filing of the complaint in this action, November 12, 1982, at the Massachusetts judgment interest rate of 8%, *see* Mass.Gen.Laws Ann. ch. 235, § 8 and ch. 231, § 6C (amended 1980). Although it seems clear that the Massachusetts judgment interest rate (which is less than the Maine rate) is applicable to the period from the entry of the judgment to the filing of the present action, *cf. Knight v. Barnes*, 182 F.Supp. 383, 384 (S.D.Cal. 1960) [there can be no dispute that rate of the state of rendition applied from the entry of judgment until the registration of the judgment in the District of California court], neither party

has addressed the question of whether prejudgment interest in this case should be awarded at the rate provided in the Maine prejudgment interest statute, 14 M.R.S.A. § 1602 (Supp.1983), or at the Massachusetts judgment interest rate. However, inasmuch as the rate in either case would be 8%, the Court need not decide this question. The Plaintiff is entitled to a judgment in the amount of the judgment (plus costs) and interest at the rate of 8% from the date of the Massachusetts judgment to the date of this judgment.

9. It is arguable that the motion for summary judgment, a dispositive motion, could not properly be granted without the Court reviewing the Magistrate's order denying Defendant's request

*Conclusion*

Accordingly, the Magistrate's Recommended Decision on Plaintiff's Motion for Summary Judgment is ACCEPTED; Defendant's appeal from the Magistrate's nondispositive pretrial orders is DISMISSED as untimely and, alternatively, as moot; Plaintiff's Motion for Summary Judgment is GRANTED; and the Clerk is directed to enter judgment for the Plaintiff in the amount of One Hundred Forty-eight Thousand Five Hundred Thirty-three Dollars and Sixty-nine Cents ($148,533.69), plus interest at the rate of eight percent (8%) per annum from February 1, 1980 to the date of this judgment.

So ORDERED.

for a continuance of the hearing on the motion for summary judgment. However, the Court has reviewed the Magistrate's disposition of this request and the Court agrees that the April 7, 1983 request that the hearing on the motion for summary judgment be continued until after June 20, 1983 was mooted by reason of the fact that the hearing was held almost ten months later, on April 14, 1984. Moreover, Defendant failed to provide the Magistrate with an affidavit under Rule 56(f) or with any specific reason for a further continuance, other than his desire to attempt further discovery. In view of the foregoing, the Magistrate's denial of the request for continuance was not "clearly erroneous or contrary to law," Fed.R.Civ.P. 72(a), but represented a sound exercise of judicial discretion.