LAWRENCE–ALLISON AND ASSOCIATES WEST, INC., Appellant (Defendant),

v.

John ARCHER, Clint Edwards, and Fred Noll, Defendants,

v.

Brian LORENSEN, Appellee (Plaintiff).

No. 87–184.

Supreme Court of Wyoming.

Jan. 13, 1989.

Harry G. Bondi of Harry G. Bondi, P.C., Casper, for appellant.

Frank R. Chapman of Beech Street Law Office, Casper, and Dwight F. Hurich of Preuit, Sowada & Hurich, Gillette, for appellee.

Before BROWN, C.J.*, and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice, Retired.

Appellant Lawrence–Allison & Associates West, Inc., appeals a judgment awarding damages and costs to appellee Brian Lorensen. Underlying this dispute is a tort action based on the termination of appellee's employment contract with appellant. This appeal addresses the propriety of the trial court's entry of default on liability against appellant for failure to appear at trial with counsel. Appellant also challenges an order of partial summary judgment collaterally estopping it from litigating certain factual issues raised in an April 1984 administrative decision concerning appellee's eligibility for unemployment compensation benefits. Appellant frames the issues as:

1. Were the issues decided at the administrative hearing identical to the issues to be decided by the trial court in order for the trial court to properly apply collateral estoppel to prevent Appellant from defending the allegations?
2. Did the burden of proof in the two proceedings remain the same; or was the burden of proof upon the Appellant at the administrative proceeding and upon the Appellee, as a party Plaintiff, in his civil lawsuit? If so, does such shift in burden of proof prevent application of principles of collateral estoppel?
3. Was it error for trial court to permit withdrawal of counsel and then hold Appellant in default?
4. Was it abuse of discretion in refusing to set aside the default?

5. Are the awards for past lost wages, future lost wages, and loss on annuity supported by the evidence?

Appellee frames the issues in this way:
1. Did the Trial Court Err in Failing to set aside the Default Entered against Appellant?
2. Did the Trial Court Erroneously Apply Collateral Estoppel to the Employment Security Commission Administrative Hearing?
3. Is the Judgment Supported by the Competent Evidence?

While we seriously question the trial court's application of collateral estoppel in this case, we reverse on the issue of entry of default and remand the case for further proceedings.

## FACTS

Appellant was the prime contractor with the United States Department of Energy for management of certain activities on the United States Petroleum Reserve No. 3, north of Casper, Wyoming. Appellant subcontracted work projects on the Reserve to oil field service companies, including a subcontract under which appellee was employed as a tool pusher. The subcontract specified that all employees on the Reserve would use Government Service Administration (GSA) vehicles, and that the vehicles would be used only for business purposes. Hunting on the Reserve was also prohibited.

During the 1983 antelope hunting season, appellee allegedly violated these terms of his employment contract by shooting an antelope on the Reserve and transporting it to Casper in a GSA pickup. After an investigation into the matter, appellee was terminated on October 20, 1983.

Appellee then applied for unemployment benefits, and appellant protested. After an April 3, 1984, hearing, the Wyoming Employment Security Commission (ESC) granted benefits. In an April 18 decision letter, the ESC found no evidence supporting the hunting violation and further found

* Retired June 30, 1988.

that transporting the antelope carcass in the GSA pickup was not "misconduct" under ESC regulations sufficient to justify a denial of unemployment benefits. Appellant did not appeal from the ESC decision.

Appellee filed a complaint in district court on December 26, 1985, naming appellant and three individuals as defendants in an action for wrongful termination. The complaint included a jury demand. Appellant answered and also demanded a jury trial. Appellee moved for partial summary judgment on the issue of liability on the contract. A hearing was held on February 27, 1987. On March 2, the trial court issued an order finding the parties to be collaterally estopped from litigating issues determined in the ESC decision and denying appellee's motion for partial summary judgment.

On March 1, 1987, appellant had a meeting with its counsel during which appellant apparently complained about the way its case was being prepared for trial, which was to begin March 2. The record is unclear concerning the outcome of this meeting; however, defense counsel apparently left the meeting with the initial impression that his attorney-client relationship with appellant had been terminated.

Acting on this belief, defense counsel participated in a telephone conference with plaintiff's counsel and the trial court on the afternoon of March 1, in which he moved to withdraw from the case. The trial court apparently questioned defense counsel about his motion, although no record of the conference was made, and then allowed the withdrawal. Defense counsel notified his client by telephone that afternoon, leaving appellant only Sunday evening to find new defense counsel for trial the next morning.

On the morning of March 2, a written motion to withdraw and a corresponding order were submitted to the court and filed. The motion to withdraw gave the following explanation of the circumstances leading up to the March 1 telephone conference:

2. On March 1, 1987 I came to Casper, Wyoming to prepare my client[']s testimony and arrived in the early after-noon. Upon arrival at the office of Lawrence–Allison and Associates, I was greeted by the general manager, Jim Watson, and after discussing the status of the case with Mr. Watson he informed me that as the representative of the corporate defendant and speaking on behalf of the individual defendants that my services as the attorney for all of the defendants were no longer desired and they wished to obtain other counsel to represent them in this matter.

Appellant's general manager, Mr. James Watson, appeared that morning for the beginning of trial without replacement counsel and unable to proceed. The trial began with the following colloquy:

THE COURT: As I understand it the corporate defendant here has discharged their attorney. Do you have another attorney to represent the company?

MR. WATSON: No, sir, I do not, and I would like to make a statement about discharging Mr. Horn. This is the first time I have seen the Motion here from Mr. Horn, and I really have to disagree with it, Your Honor.

We disagreed, expressed our lack of confidence in Mr. Horn in representing us, discussed the possibility of changing attorneys, the possibility of bringing in other attorneys, to give him additional support. Mr. Horn said, if you don't have confidence in me as your attorney, I don't want to represent you, got up, took his box of files and left. And he filed this motion, which I say, we had not seen until this morning. So I had assumed at this point his Motion to Withdraw was based upon the disagreement and not the fact that said we had discharged him, which is not the case, Sir.

I expressed a serious concern for his ability to represent us and have listed several reasons that were stated to him, if I may give them to you, Sir.

After Mr. Watson explained his impressions of the March 1 meeting with original defense counsel, the trial court gave the following reply:

THE COURT: From what you have said and from what Mr. Horn has told

me, it appears to me, first, that this difference of opinion between the corporation and Mr. Horn as to his handling of the case is something that has been going on for quite some time, and should have been dealt with before the eve of trial. The problem is we have got a courtroom full of jurors, witnesses here for the other side, and as far as I know the other side is ready to go. This trial has been scheduled for quite some time. I think the differences between the corporation and Mr. Horn should have been resolved long before now. From what you have said and what he has said, it appears to me he was either discharged, as he claims, or else his position in the case was made untenable, and at the last minute by all the objections and criticisms of him. So I don't think that the fact that the corporation is without an attorney at this time is the fault of anyone but the corporation itself.

*So, I won't grant a continuance to obtain further counsel at this stage then the corporation is in default, and judgment can be entered against it.* (Emphasis added.)

The trial court allowed appellee to amend his complaint against the individual defendants, and granted those defendants a continuance so they could obtain independent counsel. The trial court then adjourned the proceedings without requiring appellee to prove his case. A default judgment for $1,437,063.44 plus $3,224.06 in costs was entered the next day, March 3, based solely on an affidavit of one of appellee's witnesses. Appellant went off in search of a new attorney, and appellee filed execution on the judgment on March 10.

On March 11, through new defense counsel, appellant moved the trial court to set aside entry of default and the default judgment, to grant a new trial and to alter or amend the judgment. Attached to this omnibus motion were a series of affidavits, including a supplemental affidavit from original defense counsel. This affidavit gave a softened version of the events and impressions that resulted from the March 1 meeting between appellant and its first attorney:

2. On Sunday, March 1, 1987, I visited with Jim Watson, the General Manager, for the Defendant Lawrence–Allison & Associates West, Inc., hereinafter "L.A.W.". Also present at the meeting, was Mr. Dave Kelly, an employee of L.A.W. The tenor and tone of the questioning put to me by Mr. Watson in questioning my legal abilities to properly represent all of the Defendants in the captioned matter was of great concern to me and very upsetting to me. I had the distinct impression that Mr. Watson wanted to have additional or other counsel represent the Defendants in the trial scheduled for March 2, 1987.

3. As a result of the meeting with Mr. Watson, and the fact that he and his associates were uncomfortable with me continuing to represent them in this proceeding, I advised Mr. Watson and Mr. Kelly during our meeting of March 1, 1987, that I would withdraw as their counsel if that was their desire and allow them to obtain other counsel to represent them. I also told Mr. Kelly and Mr. Watson that I would talk to the judge about withdrawing from the case. I subsequently spoke with Judge Spangler and briefly related to him some of the foregoing information and I was orally advised by Judge Spangler that he would permit my withdrawal as counsel for the Defendants.

4. After my discussion with Judge Spangler, I then telephoned Mr. Watson and advised him that the judge had granted my request for withdrawal.

5. During my discussion in the afternoon of March 1, 1987, with Judge Spangler and Frank Chapman, I was under the impression that the judge would allow my former clients time to obtain other counsel especially when Judge Spangler commented during our telephone conversation that a corporation could not proceed without an attorney.

On March 13, appellant moved the trial court to stay any further attempts at execution on the judgment. On March 27, the trial court conducted a hearing on appellant's omnibus motion to set aside entry of

default and default judgment. Appellant mounted a three-pronged argument in favor of setting aside entry of default and default judgment by asserting that: (1) the trial court should not have entered default under W.R.C.P. 37 and 55, and that doing so denied appellant due process of law; (2) that there was good cause shown under W.R.C.P. 55(c) to set aside the entry of default, and there was also mistake, inadvertence, surprise and neglect to justify relief under W.R.C.P. 60(b)(4) and (6); and, (3) that appellant had never received written notice of the application for default judgment at least three days before its submission to the court as required by W.R.C.P. 55(b)(2). Appellant's new attorney had a lengthy exchange with the court concerning what really transpired on March 1 that led to the withdrawal of original defense counsel. After this exchange, the trial court set aside the default judgment but preserved the entry of default. The trial court further found that no meritorious defense remained on the issue of liability, and ordered the parties to submit affidavits and other evidence so that damages could be re-assessed after a subsequent hearing.

An abbreviated hearing on damages took place on May 18. The trial court issued a decision letter on May 20, and entered an order on June 2, awarding total damages and costs of $254,005.18. This appeal from the denial of appellant's motion to set aside entry of default followed.

Appellant's first two issues suggest strongly that the trial court should not have applied collateral estoppel to the "issues" addressed in the ESC decision letter. We will not address those issues, however, because the trial court's entry of default on March 2, 1987, provides an independent basis for reversal.

## STANDARD OF REVIEW

We begin analysis of this case by noting that it involves a direct appeal from the trial court's order denying appellant's motion to set aside entry of default under W.R.C.P. 60(b)(4).[1] *Dexter v. O'Neal,* 649 P.2d 680, 681 (Wyo.1982). See also 11 C. Wright and A. Miller, Federal Practice and Procedure, § 2871 at 258 (1973). A judgment or order is void and subject to attack under Rule 60(b)(4) if the court that rendered it "acted in a manner inconsistent with due process of law." *Aguchak v. Montgomery Ward Co., Inc.,* 520 P.2d 1352, 1354 (Alaska 1974); see also 11 C. Wright and A. Miller, supra, § 2862 at 199–200. Due process of law in this context is guaranteed to a party with a legitimate property or liberty interest at stake under the U.S. Const. amends. IV and V and Wyo. Const. art. 1 § 6. *White v. Board of Trustees of Western Wyoming Community College District,* 648 P.2d 528, 535 (Wyo.1982), cert. denied, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983). Appellant has a property interest at stake sufficient to invoke these guarantees and carries the burden of proving that it was denied due process of law when the trial court entered default against it under the circumstances of this case. *Holm v. State,* 404 P.2d 740, 743 (Wyo.1965).

Normally, when appealing from the denial of a motion for relief from a judgment or an order under W.R.C.P. 55(a) and 60(b)(1)–(3), (5)–(6), the movant must show that the denial of the motion was an abuse of discretion. *Farrell v. Hursh Agency, Inc.,* 713 P.2d 1174, 1180–81 (Wyo.1986). The movant must then show that he could have asserted a meritorious defense to the action had the motion been granted. *Adel v. Parkhurst,* 681 P.2d 886, 889 (Wyo.1984); see also 11 C. Wright and A. Miller, supra, § 2862 at 197.

An appeal from the denial of a W.R.C.P. 60(b)(4) motion, on the other hand, presents a direct attack on the validity of the judgment or order itself, hence, a pure question of law. "Once a judgment is determined to be void, there is no question of discretion

1. W.R.C.P. 60(b)(4), which is identical to its federal counterpart, provides:

    (b) On motion, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (4) the judgment is void * * *.

on the part of the court when a motion is made under Rule 60(b)(4)." *2–H Ranch Company, Inc. v. Simmons,* 658 P.2d 68, 73 (Wyo.1983). Cf. *Cates v. Eddy,* 669 P.2d 912, 916, 50 A.L.R.4th 821 (Wyo.1983). Further, the movant is not required to show the availability of a meritorious defense before he can receive relief from the judgment or order appealed. *Mickens v. Calame,* 497 So.2d 505, 506 (Al.Civ.App. 1986). Applying these principles to this case, the only issue before us is whether the order entering default against appellant is void, as a matter of law, because its entry was erroneous as a matter of law.

## ENTRY OF DEFAULT

Since there is no evidence in the record suggesting that the trial court entered default under W.R.C.P. 37(b)(2)(C) or (D) as a discovery sanction, the trial court must have based its actions on W.R.C.P. 55(a), which provides:

> (a) *Entry.*—When a party against whom a judgment for affirmative relief is sought *has failed to plead or otherwise defend* as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default. (Emphasis added.)

In this case, appellant's pleadings were in order and had been properly served upon the opposing party. Appellant never withdrew its responsive pleadings and jury demand, and never gave any indication that it was not prepared to defend the case. The sole basis for entering default against appellant seems to have been the trial court's perception that appellant fired its attorney on March 1, and thereby failed to "otherwise defend" under W.R.C.P. 55(a), when it appeared at trial without counsel.

## FEDERAL DUE PROCESS

W.R.C.P. 55(a) is identical to F.R.C.P. 55(a). From that starting point, appellant directs us to a group of federal and state cases involving the entry of default under Rule 55(a). These cases arise from fact patterns where a defendant's attorney has withdrawn from the case shortly before trial, and the defendant is unable to pro-ceed and/or does not appear for trial. These cases are all rooted in the Fifth Circuit decision in *Bass v. Hoagland,* 172 F.2d 205, 210–11 (5th Cir.), cert. denied, 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949).

*Bass* involved a collateral attack on a default judgment entered against the defendant under F.R.C.P. 55(a), after neither the defendant nor his attorney appeared for trial. Appellant's attorney had withdrawn from the case shortly before trial and appellant claimed he never had notice of the proceeding. The trial court entered default and the defendant did not receive notice of the subsequent default judgment until the plaintiff tried to enforce the judgment in another jurisdiction over two years later. With the time for appeal from the default having passed, defendant attacked the entry of default collaterally, claiming he had been denied due process of law under the Fifth Amendment. In a rather vague opinion, the Fifth Circuit agreed and stated:

> Rule 55(a) authorizes the clerk to enter default "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." This does not require that to escape default the defendant must not only file a sufficient answer to the merits, but must also have a lawyer or be present in court when the case is called for a trial. The words "otherwise defend" refer to attacks on the service, or motions to dismiss, or for better particulars, and the like, which may prevent default without presently pleading to the merits. *When Bass by his attorney filed a denial of the plaintiff's case neither the clerk nor the judge could enter a default against him. The burden of proof was put on the plaintiff in any trial. When neither Bass nor his attorney appeared at the trial, no default was generated; the case was not confessed. The plaintiff might proceed, but he would have to prove his case.* If there was an erroneous idea that the absence of counsel caused a default, still Rule 55(b)(2) required three days notice to Bass or his

counsel before a judgment by default could be considered. Bass under the admitted facts knew he was not in default, did not know his counsel had withdrawn, and had no notice that a judgment by default was to be asked. *To get such a judgment without evidence and without notice is not in our opinion due process of law.*

*Bass,* 172 F.2d at 210 (emphasis added).

This language was widely adopted in ensuing years for the proposition that a party who has properly filed and served responsive pleadings cannot be defaulted under Rule 55(a) for failing to appear at trial, because doing so would violate federal due process requirements. See, e.g., *Ohio Valley Radiology Associates, Inc. v. Ohio Valley Hospital Association,* 28 Ohio St.3d 118, 502 N.E.2d 599, 602 (1986) and cases cited therein; *Coulas v. Smith,* 96 Ariz. 325, 327, 395 P.2d 527, 529 (1964); *Reuther v. Gang,* 146 Vt. 540, 507 A.2d 972, 973 (1986).

Limiting the entry of default under Rule 55(a) on federal due process grounds is attractive because it is straightforward and simple. We are not convinced, however, that the holding in *Bass* stands for that proposition when that case is viewed in light of more recent Fifth Circuit caselaw. The scope of *Bass* has always been suspect in terms of Rule 55(a) and Fifth Amendment due process requirements, because it never clearly articulated what factor(s) resulted in a denial of due process to the defendant. See, e.g., Note, *Extending Collateral Attack: An Invitation To Repetitious Litigation,* 59 Yale L.J. 345, 347–53 (1950). The Fifth Circuit apparently recognized this problem, at least in terms of its effect on the availability of collateral attack on default judgments, and used a 1982 decision to clarify the basis for the denial of due process that occurred in *Bass:*

> The leading case allowing collateral attack of a default judgment for procedural errors during the course of a jurisdictionally proper proceeding is *Bass v.*

*Hoagland,* 172 F.2d 205 (5th Cir.), cert. denied, 359 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949), *noted in Recent Cases,* 62 Harv.L.Rev. 1400. In *Bass* the plaintiff sued to enforce a default judgment obtained in another federal court. In the original trial court the defendant appeared, answered, and requested a jury trial. Defense counsel then withdrew. On the day of trial defendant was not present. The trial judge treated the defendant in default because of the earlier withdrawal of his counsel and entered judgment for the plaintiff in the precise amount requested in his complaint, without a jury trial and apparently without taking any evidence. Defendant was not aware of the trial date, was given no notice prior to the entry of the default judgment, and was fraudulently not informed of the judgment until more than two years after it was entered. *The court held that the combination of these errors resulted in a denial of due process.*

*Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1027 (5th Cir.1982), cert. denied, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983) (emphasis added). Accord *Williams v. New Orleans Public Service, Inc.,* 728 F.2d 730, 735 (5th Cir.1984); and *Irvin L. Young Foundation, Inc. v. Damrell,* 607 F.Supp. 705, 709 (D.Me.1985). The *Fehlhaber* language arguably limits the due process implications of *Bass* to the facts in that case, and also shifts the emphasis in *Bass* from the Rule 55(a) "otherwise defend" language, to procedural defects that caused a lack of notice. Because of this, we choose not to rely on case law addressing Rule 55(a) that is based on *Bass,* and its application of the Fifth Amendment.

### STATE DUE PROCESS

Our inquiry, however, does not end with that conclusion. We now consider the actions of the trial court under Wyo. Const. art. 1, § 6.[2] We may decide a case based upon the requirements of the Wyoming Constitution as a "bona fide separate, ade-

---

**2.** Although due process under Wyo. Const. art. 1, § 6, was not raised specifically in the trial court, we may consider it now, because it in-

volves appellant's *fundamental right* to due process of law. See *Duffy v. State,* 730 P.2d 754, 758 (Wyo.1986).

quate, and independent [state] grounds * * *." *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983), cited in *Rocky Mountain Oil and Gas Association v. State Board of Equalization, Department of Revenue and Taxation*, 749 P.2d 221, 223, n. 15 (Wyo.1987). The holding in this case is rendered exclusively under the Constitution of the State of Wyoming, and references to federal case law are included only for comparison or explanation.

The most troublesome aspect of this case, in terms of state due process, is the way the trial court determined that appellant actually fired its attorney on March 1 so that default could be entered against it on March 2. Viewing the entire record, and the transcript of the March 27 motion hearing in particular, it is clear that the trial court entered default based upon the impressions it had formed in the March 1 telephone conference with original defense counsel and plaintiff's counsel. The following colloquy between replacement defense counsel and the trial court about this problem is illustrative:

[MR. BONDI] * * * The crux of the motion is probably on Point 5, in discussing Mr. Horn's rendition of the facts, and I am going to refer to Mr. Horn's supplemental affidavit, I think it clearly establishes good cause. One of the things that Mr. Horn's affidavit establishes at paragraph 2, he was clearly not terminated, paragraph 2 of Mr. Horn's affidavit dated March 9, 1987, quotes the tenor and tone of questioning was of great concern to me. Those, Your Honor, are not words of termination, civil litigants and criminal litigants sometimes ask their counsel in ways that are discerning to us and make us uncomfortable, to use Mr. Horn's expression, I don't think that gives me grounds for withdrawal. Mr. Horn's affidavit again at paragraph 2, "I had the distinct impression that Mr. Watson wanted to have additional or other counsel represent the defendants." Now, he doesn't say that Mr. Watson had the distinct impression, he clearly says, I have an impression. You know, his impression is different than saying you are out of this.

THE COURT: The trouble with the affidavit, Mr. Bondi, is it is not true.

MR. BONDI: Which affidavit?

THE COURT: Mr. Horn's, Mr. Horn told me that he had been fired.

MR. BONDI: Your Honor, I don't have a record of those proceedings, if the defendant had had that opportunity I don't know if Mr. Horn was under oath when speaking with you on Sunday afternoon, with no opportunity for the defendant to express his views. Mr. Horn says under oath, I had the distinct impression Mr. Watson wanted me to obtain other counsel.

I think Mr. Horn's statement, which supplements his first motion to this Court should be given and treated with deference by the Court.

THE COURT: Well, not when he told me something else earlier.

MR. BONDI: Well, from Defendant's point of view, Defendant should have an opportunity to contest that, put that in issue, particularly before a ruling is made. It is our position—

THE COURT: To contest what?

MR. BONDI: *Whether or not he was terminated. The point is the Court apparently took that, if I may argue that, the Court took Mr. Horn's ex parte communication with Mr. Chapman on the telephone Sunday afternoon, at face value without being put under oath, without having—*

THE COURT: *Mr. Horn told me, Mr. Bondi.*

MR. BONDI: I think I understand what you are saying. This would be the Sunday afternoon telephone conversation.

THE COURT: Right.

MR. BONDI: With respect, Mr. Horn was not under oath when talking to you, and he is under oath in this affidavit. Point 2, he didn't inform counsel, excuse me, didn't inform the defendant of what he was saying or the defendant, what was the defendant to do on Sunday, the first crack the defendant had at the 9

o'clock hour, less than 24 hours, he took exception with that. But I understand what the Court is saying, but, I think, his affidavit is one statement, and his unsworn statement to you·is another, simply didn't give the opportunity for the defendant to be heard on what he was representing to you on Sunday. (Emphasis added).

It is basic that, *before* a property interest can be terminated, except in emergency situations, due process must be afforded to litigants in the form of notice and a *meaningful* opportunity to be heard. *In the Matter of GP*, 679 P.2d 976, 986–87 (Wyo. 1984); and *White*, 648 P.2d at 535. A meaningful opportunity to be heard necessarily requires a hearing involving elements of formality and procedure dependent upon "the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971), cited in *In the Matter of GP*, 679 P.2d 976, 987 (Wyo.1984).

The entry of default in this case was entirely dependent upon the trial court's finding that appellant had, of its own accord, fired its attorney less than a day before trial and, as a result, failed to "otherwise defend" the case under W.R.C.P. 55(a). We construe this language in the rule to mean that a defendant must show by his conduct that he no longer intends to defend the case on the merits. We believe unusual circumstances could arise that would allow a trial court to properly default a corporate defendant under W.R.C.P. 55(a), for refusing to appear at trial with counsel.[3] Such an extreme action by a trial court, however, must be recognized for what it is. Entry of default under Rule 55(a) injects a strong possibility that the corporation will never be able to litigate its case. Default judgments are not favored in the law, and when possible, a case should be decided on its merits. *Westring v. Cheyenne National Bank*, 393 P.2d 119, 122 (Wyo.1964).

When the basis for entry of default against a corporation is failure to·appear with counsel, and particularly when the corporation has no. attorney because the trial court allowed counsel's withdrawal only hours before trial, the findings underlying the entry of default should be rendered after a fair hearing.[4] Due process demands at least an informal hearing for presentation of evidence and explanations of the defendant, its counsel, and the opposing party. The trial court should allow both parties, and the corporate defendant's counsel, to present evidence and explanations of the reason for a motion by defense counsel to withdraw on the eve of trial, before making findings that will lead to a Rule 55(a) default. This is the type of hearing contemplated by Rule 55(a) in this fact situation.[5]

We hold that the trial court denied appellant due process of law under Wyo. Const. art. 1, § 6, when it entered default based on the impressions it gained in the ex parte

---

**3.** This is only possible because a corporation must plead or appear in court through a licensed attorney. *Starrett v. Shepard*, 606 P.2d 1247, 1253 (Wyo.1980). The *only* situations we have found where a corporate defendant evidenced a sufficient desire to cease defending its case under Rule 55(a), are those in which the corporation failed to obtain replacement counsel after ignoring eight months or more of court orders to do so. See *Dow Chemical Pacific Ltd. v. Rascator Maritime, S.A.*, 782 F.2d 329, 336 (2d Cir.1986); *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir.1967); Cf. *Transportes Aereos De Angola v. Ronair, Inc.*, 104 F.R.D. 482, 504–509 (D.Del.1985).

Another trial court option, when confronted with a corporate defendant who appears without counsel, is to go forward with the trial as scheduled. The plaintiff is allowed to put on his case and then judgment is entered based on that evidence and the record. See J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice, ¶ 56.02[3] n. 12 (2d. ed. 1988).

**4.** Withdrawal because an attorney "can't get along" with a client should rarely be allowed and should not have been allowed here. When a withdrawal is requested, the trial court should carefully consider the factors set out in the Wyoming Rules of Professional Conduct 1.16. If withdrawal is allowed, it must be accomplished by court order. Uniform Rules for the District Courts 102(c).

**5.** The situation here is factually different from cases involving W.R.C.P. 37, discovery sanctions. See, e.g., *Farrell v. Hursh Agency, Inc.*, 713 P.2d 1174, 1179–80 (Wyo.1986).

March 1 telephone conference. A minimal due process hearing was necessary before default could have been properly entered. Further, we stress that this holding is limited to the specific factual and procedural circumstances of this case.

Reversed and remanded for further proceedings consistent with this opinion.

THOMAS, J., filed a specially concurring opinion.

THOMAS, Justice, specially concurring.

I have attempted to persuade myself that the issues in this case are of constitutional dimensions. I cannot agree that they are. I see simply errors of law on the part of the district court which prevented the entry of the judgment in favor of the appellee. We can correct this error by reversing without justifying a conclusion that the judgment is void.

As the majority opinion holds, the district judge did not understand the limited significance of the phrase "failed to plead or otherwise defend" found in Rule 55(a), W.R.C.P. This was not an instance in which the corporate defendant had failed to plead or otherwise defend, and there was no justification for invoking Rule 55, W.R.C.P. Certainly, any claim of the plaintiff to judgment by default would have required the notice set forth in Rule 55(b)(2), W.R.C.P., and, obviously, that procedure was not followed. Consequently, the default judgment must be set aside.

The conclusion that the trial court erred in entering a default judgment in this instance is consistent with the rationale in *Bass v. Hoagland*, 172 F.2d 205 (5th Cir. 1949), cert. denied 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949). The only necessity to invoke due process concepts in *Bass* related to the fact that the case was not appealed but, instead, the default judgment was the subject of a collateral attack. In this instance, there is an appeal from the erroneous judgment, and the error of law committed by the trial judge adequately disposes of any concern about the abuse of discretion.

Under prior cases from this court, the trial court might have been justified in going forward with trial because of the facts that it perceived, which were that the defendant had discharged its attorney on the eve of trial in order to secure a continuance. No trial was had, however. If one had been held, it would have been clear that the trial judge had abused his discretion because of the failure to take the trouble to become informed of the facts prior to a determination. Ex parte dialogue with the attorney whom the court believed to have been discharged does not count for that purpose.